[No. C057345. Third Dist. Feb. 25, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES HAYES, Defendant and Appellant.

## COUNSEL

John Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, and Jeffrey D. Firestone, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Defendant James Hayes appeals following a conviction for possessing/carrying a "sharp instrument" upon his person while confined in a penal institution. (Pen. Code, § 4502, subd. (a).)[1]

As pertinent, the trial court instructed the jury, "A sharp instrument is an instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession." This instruction allowed the jury to

---

[1] Undesignated statutory references are to the Penal Code.

Section 4502, subdivision (a), provides in part: "Every person who, while at or confined in any penal institution, . . . possesses or carries upon his or her person or has under his or her custody or control any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, any dirk or dagger or *sharp instrument*, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon, is guilty of a felony and shall be punished by imprisonment in the state prison for two, three, or four years, to be served consecutively." (Italics added.)

conclude that the instrument in question did not have to be "sharp" as that term is commonly used. Under the court's instruction, the jury could have concluded a baseball bat was a sharp instrument. In closing argument, the prosecutor told the jury that, pursuant to aforementioned instruction, "This is a legal definition of a sharp instrument for this case" and commonsense definitions of "sharp" do not apply.

All this constitutes prejudicial error. As used in section 4502, a "sharp instrument" must be "sharp" as that term is commonly used. The court's instruction and the prosecutor's argument encouraged the jury to conclude otherwise.

■ In the published portion of the opinion, we shall reverse the judgment because the jury instruction created an ambiguity, exploited by the prosecutor to argue a legally incorrect theory that the jurors could find defendant guilty without finding the item was "sharp." In the unpublished portion of the opinion, for guidance on remand, we shall explain there was no evidentiary error. We need not address defendant's contention regarding jury selection.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with possessing and carrying upon his person a sharp instrument on November 29, 2005, while confined in a penal institution, in violation of section 4502. Two prior convictions were alleged—a 1992 murder and a 1992 attempted murder. Trial of the prior convictions was bifurcated.

The trial evidence included the following:

A prison correctional officer testified that defendant was confined in state prison when, on November 29, 2005, the officer searched defendant's cell, which defendant shared with another inmate. The officer then told defendant to strip for a search. When defendant handed over his boxer shorts, the officer discovered in the shorts a black object tied with string to the fly of the boxers. The officer described the object (which was admitted into evidence) as a "weapon" of hard plastic, about three or three and one-half inches long, rounded on one end, and sharpened to a point on the other end. The officer viewed the object as a weapon because it was sharpened to a point, could be gripped in the hand with the point protruding, and would not be detected by metal-detecting wands.[2]

---

[2] The People say the officer testified this object could be used for attacking another inmate or officer, or for self-defense. However, the cited portion of the record shows only that the officer said, in his experience and training, inmates develop weapons for the purpose of attack or self-defense. The officer was not speaking of the particular object at issue in this case.

On cross-examination, when questioned as to whether the object was sharp or pointed, the officer said it "comes to a point." Defense counsel pursued the matter:

"Q. . . . You testified today in court you thought it was a sharp object; is that right?

"A. It comes to a point. Yes, sir.

"Q. And that's kind of my point. It comes to a point, but it's not sharp really, is it?

"A. Define, sharp, sir?

"Q. Sharp—

"A. Cutting sharp? Like a knife? Is that what you're indicating?

"Q. Not so much edge cutting, but how about point cutting?

"A. I don't understand how a point cuts.

"Q. You think it has a sharp point where it penetrates easily, like a sharp object?

"A. Yes, sir."

Defense counsel held up a Bic pen, and the officer testified the pen's point was "[s]imilar" to the point of the object in question.

On redirect, when asked if the point was sharp like a dart, the officer said, "It's a sharp point. Yes, sir." On the witness stand, the officer put on latex gloves, touched the object's point to his hand, and said it felt sharp.

On recross, the officer said the object was not a dart. He admitted the object did not penetrate the latex glove but opined it would have, had he put more pressure on it.

On further redirect, the prosecutor had the witness hold up one layer of glove and push the object into it, which resulted in the glove appearing partially shredded.

Another officer testified he was present during the cell search, saw the object, and considered it a weapon because it could be gripped in the hand and "because of the sharpness of the point itself," which could be used to "penetrate something." On the witness stand, the officer held the object in his hand in the manner of a "stabbing weapon" that could stab someone's throat or arm. On cross-examination, the officer admitted he did not use the word "sharp" in his written report, which merely described the item as a black plastic weapon. He also admitted the point of the item was rounded slightly at the tip, like the Bic pen. On redirect examination, the officer said he thought the object was a sharp instrument.

Defendant testified he made the object by melting down a piece of a CD (compact disc) case, in order to fashion a screwdriver he could use to work on his radio. He used the object as a screwdriver on his radio and cassette player. He then remolded the object with the intent to use it to clean his toenails. He did not get a chance to try it on his nails before it was confiscated. Defendant put the object in his underwear because he knew it might be considered contraband—not because it was sharp, but because it was an altered object and might look like a weapon. Defendant thought it would be confiscated but did not think he could be charged with a felony for having it. Defendant gave his opinion that the object is not sharp enough or long enough to be considered a weapon, but he answered, "Maybe. Yeah," when asked if it might look like a weapon to a correctional officer because it has a sharp point. The object could puncture something if pressed with enough force, but so could a pen or pencil, which inmates are allowed to have.

In discussions concerning jury instructions, defendant proposed a jury instruction, stating in part that in order to be a sharp instrument under section 4502, it must be proved that (1) "[T]he instrument has a thin, keen edge or a fine point" (based on the Webster's Dict. definition of "sharp"), and (2) "[T]he instrument, with or without a handguard, is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." The latter part was modified from the definition of "dirk or dagger," which the defense considered arguably applicable in defining "sharp instrument." (On appeal, defendant does not contend that the trial court's rejection of this proposed instruction constitutes reversible error.)

The People proposed that the jury be instructed, assertedly based on our opinion in *People v. Custodio* (1999) 73 Cal.App.4th 807 [87 Cal.Rptr.2d 18] (*Custodio*), that "a sharp instrument is an instrument capable of being used to inflict injury as a stabbing device." The trial court observed *Custodio*'s actual language was that section 4502 applies to "instruments that can be used to

inflict injury and that are not necessary for an inmate to have in the inmate's possession." (73 Cal.App.4th at p. 812.)

The trial court, after rejecting defendant's proposed instruction, gave a jury instruction incorporating *Custodio*'s language:

"The defendant is charged in Count One with possessing a weapon, specifically a sharp instrument while in a penal institution.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant was present at or confined in a penal institution;

"2. The defendant possessed or carried on his person or had under his custody and control a sharp instrument;

"3. The defendant knew that he possessed, carried on his person, or had under his custody or control the sharp instrument;

"AND

"4. The defendant knew that the object was a sharp instrument.

"A penal institution is a state prison.

"The People do not have to prove that the defendant used or intended to use the object as a weapon.

"*A sharp instrument is an instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession.* [Italics added.]

"You may consider evidence that the object could be used in a harmless way in deciding if the object is [a] sharp instrument. [¶] . . . [¶]

"The [P]eople allege that the defendant possessed or carried on his person or had under his custody or control the following weapon: a sharp instrument. You may not find the defendant guilty unless all of you agree that the People have proved the defendant possessed or carried on his person or had under his custody or control this sharp instrument."

The prosecutor argued to the jury:

"The People do not have to prove that the Defendant used or intended to use the object as a weapon. Now you heard the expert opinion of the officers that [the object] was, in fact, a weapon, but we don't have to prove that beyond a reasonable doubt. That's just something the instruction tells you.

"Now, this next [instruction] here is probably the critical definition in the case. 'A sharp instrument is an instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession.' That tells you that is what a sharp instrument is. Let me just repeat that. 'A sharp instrument is an instrument that can be used to inflict injury,' that's the first part, 'and that is not necessary for the inmate to have in his possession.' That's the central definition in this case. That tells you what a sharp instrument is. If the evidence meets that definition, we've proved that there is a sharp instrument."

The prosecutor also argued the object at issue is sharp.

Defense counsel in closing argument to the jury argued that, to satisfy section 4502, the object had to be sharp in the "common sense" meaning of having a fine point or sharp edge, which defense counsel argued was not the case with this particular item. Defense counsel argued that, otherwise, many items in defendant's cell would violate the statute, including his radio and TV, because they could inflict injury.

In rebuttal, the prosecutor argued to the jury:

"[Defense counsel] talked a lot about whether the instrument is sharp or not. You're probably tired of that word 'sharp.' I just have it up here on both sides, because I want to emphasize to you how important it is in terms of what the definition of 'sharp' is. This is in a jury instruction the Judge will give you. It's coming from Her Honor. It's not something that I made up. It's not something that I'm hoping you will like or not like. This is a legal definition of a sharp instrument for this case.

"Now, [defense counsel] went on about, well, you know, it's—it's not really the common sense definition of sharp. Ladies and Gentlemen, I—I submit to you that even if you wanted to go by the common sense definition which, is this a sharp pointed thing that if you—if you poke it into somebody that it's going to—going to stick them? Yeah. It—it meets that definition anyway. It's a sharp instrument by that.

"But in making your decision, as the Judge will instruct you, you have to go by this definition, not what [defense counsel] wants to claim is the—the common sense, you know, definition of a sharp instrument. It's this definition. That's why I have it up here and up there. Because it's that important.

"A sharp instrument is an instrument that can be used to inflict injury. Can this thing be used to inflict injury? Absolutely. Absolutely."

Regarding the glove, the prosecutor argued the item did go through the glove. Responding to defense counsel's assertion that the definition would make the radio and TV illegal, the prosecutor argued (1) prison rules expressly allowed TV's and radios, (2) TV's and radios have acceptable nonviolent uses. In response to defendant's assertion that he used the item as a screwdriver and to clean his toenails, the prosecutor argued a screwdriver *is* a sharp instrument, and an object would have to be sharp to clean toenails.

The jury returned a verdict finding defendant guilty of the section 4502 offense. After trial of the prior convictions, the jury found them true.

The trial court sentenced defendant to a term of 25 years to life, to be served consecutively to the sentence already being served.

## DISCUSSION

### I. *Jury Instruction Regarding Sharp Instrument*

Defendant contends the trial court erred by instructing the jury, over defense objection, that, "A sharp instrument is an instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession." Defendant contends the instruction (and the prosecutor's use of that instruction in argument to the jury) allowed the jury to find defendant guilty without finding the instrument was sharp. We shall conclude that, while the instruction did not—as defendant suggests—state that a sharp instrument is "any" instrument that can be used to inflict injury (etc.), the instruction created an ambiguity which the trial court expressly allowed to be exploited by the prosecutor, who argued to the jurors that they could find defendant guilty without finding the item was "sharp" under the common definition of the term. Accordingly, we shall conclude prejudicial instructional error requires reversal of the judgment.

The trial court based this instruction on our opinion in *Custodio, supra,* 73 Cal.App.4th 807, and on the fact that the Bench Notes to the standard instruction concerning section 4502—Judicial Council of California Criminal

Jury Instructions (2008) CALCRIM No. 2745[3]—state, "If the prosecution alleges that the defendant possessed a 'sharp instrument,' the court may consider *People v. Custodio*[, *supra*,] 73 Cal.App.4th 807, 813 . . . ." (Bench Notes to CALCRIM No. 2745, *supra*, p. 659.)

■ However, while the trial court's effort was reasonable in light of the CALCRIM Bench Notes, " 'it is dangerous to frame an instruction upon isolated extracts from the opinions of the court.' " (*People v. Cavitt* (2004) 33 Cal.4th 187, 202 [14 Cal.Rptr.3d 281, 91 P.3d 222].)

In *Custodio*, which did not even involve jury instructions, we did not hold or even suggest that "sharp instrument" should be defined for the jury as an instrument that can be used to inflict injury and is unnecessary for the inmate to have. Rather, we rejected a defendant's argument that "sharp instrument" in section 4502 is unconstitutionally vague on its face and as applied. (*Custodio, supra*, 73 Cal.App.4th at p. 811.) Correctional officers found in the defendant's cell "a plastic barrel of a ballpoint pen with a piece of metal like a sewing machine needle sticking out of it. An expert opined that the object was 'very capable of being used as a weapon' because the metal was extremely stiff, had been affixed by melting the plastic of the pen barrel, and the entire object had a tapered shape so that 'once it starts, there is nothing going to stop it from going as hard as one . . . push[es] it.' " (*Id.* at p. 810.) The defendant said the item was a "cup pick" used for artistic purposes to engrave his cup and sunglasses. (*Ibid.*)

On appeal from his conviction, the *Custodio* defendant argued section 4502 was unconstitutionally vague on its face because prison guards ignore inmates' possession of sharpened pencils, which are capable of being used as weapons, and thus the absence of a statutory definition for sharp instrument permits arbitrary and discriminatory law enforcement and leaves inmates to

---

[3] CALCRIM No. 2745 states in part that the People must prove "2. The defendant (possessed[,]/ [or] carried on (his/her) person[,]/ [or] had under (his/her) custody or control[,] . . . ___ <insert type of weapon from Pen. Code, § 4502, e.g., 'explosive'>; [¶] 3. The defendant knew that (he/she) (possessed . . . the ___ <insert type of weapon . . . ; [¶] AND [¶] 4. The defendant knew that the object (was [(a/an)] ___ <insert type of weapon . . .>/could be used ___ <insert description of weapon's use, e.g., 'as a stabbing weapon,' or 'for purposes of offense or defense'>). [¶] . . . [¶]

"The People do not have to prove that the defendant used or intended to use the object as a weapon. [¶] [You may consider evidence that the object could be used in a harmless way in deciding if the object is (a/an) ___ . . . . [¶] [The People do not have to prove that the object was (concealable[,]/ [or] carried by the defendant on (his/her) person[,]/ [or] (displayed/ visible)).]" (Boldface omitted.)

speculate whether a particular sharp object violates the statute. (*Custodio, supra,* 73 Cal.App.4th at p. 811.)

 We said in *Custodio,* "By prohibiting prison inmates from possessing any instrument or weapon of the kind specified in the statute, section 4502, subdivision (a) is intended to protect inmates and correctional staff 'from the peril of assaults with dangerous weapons perpetrated by armed prisoners.' [Citation.] *It applies to instruments that can be used to inflict injury and that are not necessary for an inmate to have in the inmate's possession.* [Citation.]

"Thus, viewing the statute 'according to the fair import of [its] terms, with a view to effect its objects and to promote justice' [citation], a person of ordinary intelligence would know what is and what is not prohibited by the statute. For example, the person would understand that section 4502, subdivision (a) does not apply to a sharpened pencil—which ordinarily is used for a legitimate and necessary purpose—unless the inmate uses the pencil as a weapon.[4] [Citation.] Accordingly, the *statute is not unconstitutionally vague on its face.*

"Nor is the statute vague as applied in this case. Asserting that a 'cup pick' is a device made by an inmate for the ordinary purpose of using it to engrave designs on plastic items, such as cups, and suggesting that the 'cup pick' found in his possession 'was no more dangerous than is a pen or pencil,' defendant argues (1) he was required to speculate whether it was prohibited by section 4502, subdivision (a), and (2) he was prosecuted 'purely on the whim of a prison guard who chose to deal with this situation as a felony criminal offense rather than simply as an administrative matter, as apparently are the other "cup pick" cases.' Again, we disagree.

"Evidence established that the sharp instrument seized from defendant's cell was capable of being used to inflict injury as a stabbing device, and that the instrument was not necessary for defendant to have in his possession. This is not a situation where a device used for artistic purposes was possessed in a prison craft room. In fact, defendant concedes that all 'cup picks' found in prison cells are confiscated by the authorities.

"Therefore, defendant reasonably should have known he could not lawfully possess the sharp instrument in his cell. . . .

"Considering the nature of the item found in defendant's cell (including its tapered shape and the length and firmness of its sharp metal point) and the

---

[4] Actual use of the item would be prosecuted under different provisions.

fact it is not a necessary possession for an inmate, a person of ordinary intelligence would know it is a sharp instrument which falls within the prohibition of section 4502, subdivision (a)." (*Custodio, supra*, 73 Cal.App.4th at pp. 812–813, italics added.)

Thus, we did not in *Custodio* establish a definition for "sharp instrument" as any instrument that can be used to inflict injury and is unnecessary for the inmate to have in his possession, without regard to sharpness. The isolated language from *Custodio* would embrace a baseball bat, but an ordinary baseball bat is not a "sharp instrument."[5]

■ The first step in statutory analysis is "to examine the actual words of the statute, *giving to them a commonsense meaning*. [Citations.]" (*People v. Nguyen* (2000) 22 Cal.4th 872, 878 [95 Cal.Rptr.2d 178, 997 P.2d 493], italics added; accord, *Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049] ["affording the words their ordinary and usual meaning"].) ■ We think it obvious that, to be a "sharp instrument" under section 4502, the object must be sharp. This does not necessarily mean the object must have a cutting blade, like a knife or razor blade. A pointed object may qualify as "sharp." This appeal does not require us to define all ways in which an instrument may be "sharp." We merely observe that among the ways in which items can be sharp are sharpened points as well as cutting blades.

We conclude the instruction was erroneous in defining "sharp instrument" in a way that allowed the jurors to find defendant guilty even if they did not believe the item was "sharp" as that term is commonly used. The instruction removed from the jury's consideration an element of the offense: that the weapon be "sharp."

■ We turn to the question of prejudice. An instruction that omits or removes an element of an offense from consideration by the jury may be harmless if the error is harmless beyond a reasonable doubt. (*People v. Sakarias* (2000) 22 Cal.4th 596, 625 [94 Cal.Rptr.2d 17, 995 P.2d 152].)

■ Closing arguments to the jury are relevant in assessing prejudice from instructional error. (*People v. Lee* (1987) 43 Cal.3d 666, 677 [238 Cal.Rptr. 406, 738 P.2d 752]; *People v. Chavez* (2004) 118 Cal.App.4th 379, 388 [12 Cal.Rptr.3d 837].)

---

[5] The trial court's instruction, based on *Custodio*, should have said: "A sharp instrument is an instrument that is sharp and that can be used to inflict injury and that is not necessary for the inmate to have in his possession."

Here, the erroneous jury instruction was the centerpiece of the prosecutor's closing argument. Shortly after the beginning of his argument, the prosecutor showed the instruction to the jury on a screen. The prosecutor called the instruction "the central instruction in the case." The prosecutor argued that the erroneous instruction was "the critical definition in the case," as follows: "Now, this next one here is probably the critical definition in the case. 'A sharp instrument is an instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession.' That tells you that is what a sharp instrument is. Let me just repeat that. 'A sharp instrument is an instrument that can be used to inflict injury' that's the first part, 'and that is not necessary for the inmate to have in his possession.' That's the central definition in this case. That tells you what a sharp instrument is. If the evidence meets that definition, we've proved that there is a sharp instrument."

We have already recounted how the prosecutor argued that the jury should eschew the common definition of "sharp" and follow the definition of the erroneous instruction.

Given the central role of the erroneous instruction in the prosecutor's closing argument, we cannot in good conscience find the instructional error harmless beyond a reasonable doubt.

As we have noted, the jury was instructed that one element of the offense was: "The defendant possessed or carried on his person or had under his control a sharp instrument." And at one point, the prosecutor argued that "even if you wanted to go by the common sense definition . . . it meets that definition. It's a sharp instrument by that."

■ But we have no way of knowing whether the jury followed this secondary argument of the prosecutor or whether some members of the jury believed that they could follow the prosecutor's primary (and erroneous) argument and find the object was a "sharp instrument" without finding it "sharp" by the common definition of the term. Where the prosecution presents its case to the jury on alternate theories, one of which is legally correct and one of which is legally incorrect, and the reviewing court cannot tell which theory the jury applied, the conviction must be reversed. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1122, 1129, 1130 [17 Cal.Rptr.2d 365, 847 P.2d 45].) That is the case here.

■ We shall also apply the test of harmless error set out in *People v. Sakarias, supra,* 22 Cal.4th 596. There, our Supreme Court elaborated on the

test for harmless error where, as here, a jury instruction removes an element of an offense ("sharp instrument") from the jury's consideration. There the court said: "We may affirm the jury's verdicts despite the error if, but only if, it appears beyond a reasonable doubt that the error did not contribute to the particular verdict at issue. [Citations.] In particular, we may affirm despite the error if the jury that rendered the verdict at issue could not rationally have found the omitted element unproven; the error is harmless, that is, if the record contains no substantial evidence supporting a factual theory under which the elements submitted to the jury were proven but the omitted element was not. [Citation.]" (*Sakarias, supra*, 22 Cal.4th at p. 625.)

We cannot conclude beyond a reasonable doubt that the jury would have found the object "sharp" in the absence of the erroneous jury instruction and the prosecutor's erroneous closing argument. We have had the object transmitted to this court, and we have examined it. The object comes to a point, but the point is not as sharp as a sharpened pencil or an ice pick. To be sure, if the jury were to find the object "sharp," we would uphold the verdict against an attack based on lack of substantial evidence. But that is a far different thing from saying that all 12 jurors would necessarily find the object "sharp."

Defendant was not convicted of this offense (for which he is serving 25 years to life in prison) in a fair and lawful manner.

For reasons we have explained, we cannot conclude the instructional error was harmless beyond a reasonable doubt. (*Sakarias, supra*, 22 Cal.4th at p. 625.) We therefore conclude prejudicial instructional error requires reversal of the judgment.

For the guidance of the parties and the court on remand, we briefly comment on defendant's other contentions.

II., III.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 549.

## DISPOSITION

The judgment is reversed.

Raye, J., and Davis, J.,[*] concurred.

---

[*]Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.