Filed 6/16/14  P. v. Zepeda CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JAIME LEDESMA ZEPEDA,<br><br>  Defendant and Appellant. | F066169<br><br>(Super. Ct. No. MF009857A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant, Jaime Ledesma Zepeda, an inmate at the California Correctional Institution located in Tehachapi (CCI Tehachapi), of possession of a sharp instrument by an inmate. He contends the conviction must be reversed because there was insufficient evidence to establish the object in question, a dull razor blade, was a sharp instrument. He also argues the trial court erred when it excluded some of his proposed testimony and when it refused to order discovery of a memorandum between CCI Tehachapi and the Kern County District Attorney's Office. We reject all of these arguments.

Zepeda also asks us to examine the documents reviewed in camera by the trial court. The review was in response to Zepeda's motion for discovery of the personnel file of the correctional officer who discovered the razor blade in Zepeda's cell. We have done so and conclude the trial court did not abuse its discretion in refusing to disclose any documents.

## FACTUAL AND PROCEDURAL SUMMARY

Correctional Officer Stephen Greager works at CCI Tehachapi in the section of the prison in which Zepeda is housed. This section is a security housing unit. At the time of the incident, Zepeda was the only inmate in his cell.

On the day in question, Greager took Zepeda to the showers. While Zepeda was in the shower, Greager performed a random search of Zepeda's cell. When he looked under the bunk, he spotted a small portion of a razor blade protruding from the bottom of the bunk frame. Greager explained there was a small space between the bunk frame and the wall. The razor blade was attached to the bunk frame, between the bunk frame and the wall, with a magnet. The razor blade had slipped down below the bunk frame so that Greager was able to see it when he looked under the bunk. Greager retrieved the razor blade and magnet, confiscated the items, and placed them into evidence. The razor blade was not attached to a handle of any sort. The razor blade and magnet were introduced into evidence.

2.

Correctional Officer Joshua Tyree opined the razor blade was a weapon because it could be used to slash someone. "They are very easily [*sic*] to conceal -- you can conceal these very easily. And they do a very effective job of slashing other inmates or other staff or any other human being within our prison system. And they are able to be held just within the palm of the hand without hurting your own hand." Tyree further opined the razor blade did not need a handle to be used as a weapon. He explained, "it contains a very sharp edge. The edge is very sharp. And it doesn't take very much of a slashing motion or a motion on somebody's skin to open up a very, very good wound on somebody's skin." The razor blade can cause substantial injury.

Bryan Freeland testified as an expert for Zepeda. Freeland had experience as a deputy sheriff working at the Kern County jail facility. He testified he had never seen a razor blade that was not attached to a handle of some sort used as a weapon. He opined the razor blade was not a weapon. He also demonstrated how dull the razor blade was by failing to cut paper when he attempted to do so.

The information charged Zepeda with one count of unlawful possession of a sharp instrument, in violation of Penal Code section 4502, subdivision (a).[1] The information also alleged Zepeda had suffered a prior strike conviction within the meaning of section 667, subdivisions (b) through (i).

The jury found Zepeda guilty of violating section 4502, subdivision (a). After Zepeda waived his right to a jury trial on the allegation of a prior conviction, the trial court found the allegation true.

Before sentencing, Zepeda made a motion to compel discovery and arrest the judgment. The basis of the motion was the alleged existence of an agreement between the Kern County District Attorney's Office and CCI Tehachapi regarding prosecution of offenses for violation of section 4502. The trial court denied the motion and sentenced

---

[1]All statutory references are to the Penal Code unless otherwise stated.

Zepeda to a determinate consecutive term of 12 years, in addition to the indeterminate term of 50 years to life previously imposed on Zepeda.

## DISCUSSION

Zepeda makes several challenges to his conviction and his sentence. We begin with his effort to obtain Greager's personnel file.

## I.    *Pitchess*[2] **Motion**

Zepeda filed a motion seeking discovery of any evidence or complaints suggesting Greager had committed an act of (1) dishonesty, (2) false statements in reports, (3) fabricating charges or evidence, (4) "misstating, omitting, withholding, contaminating, or planting evidence or the circumstances or conditions of evidence," (5) abuse of power in his position as a correctional officer, and (6) giving false testimony.

The trial court granted the motion but limited the production to discovery of complainants and their contact information regarding allegations of false reports or false testimony by Greager. The trial court then reviewed in camera the documents produced by the California Department of Corrections and Rehabilitation (CDCR). The custodian of records was placed under oath and affirmed she had collected all documents in CDCR's possession that could be responsive to the request and searched in all areas where such documents might exist. The trial court concluded there was nothing in the records produced responsive to the request and ordered nothing be discovered to Zepeda.

Zepeda asks us to review the documents produced to confirm there are no documents in Greager's personnel file responsive to the request, and the People concede we must do so. (See, e.g., *People v. Samayoa* (1997) 15 Cal.4th 795, 827.) Our review of the documents confirms there are no responsive documents. Accordingly, the trial court did not err in denying Zepeda's request for discovery.

---

[2]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

## II.     Sufficiency of the Evidence

Zepeda challenges the sufficiency of the evidence.  The standard of review for claims of insufficiency of the evidence is well established.  "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  "[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

Zepeda's argument is that the razor blade confiscated by Greager was not a sharp instrument within the meaning of the statute.  As relevant to this case, section 4502, subdivision (a) prohibits an inmate from possessing a sharp instrument.  (*People v. Custodio* (1999) 73 Cal.App.4th 807, 811-812.)

Zepeda relies exclusively on *People v. Hayes* (2009) 171 Cal.App.4th 549.  *Hayes* involved a jury instruction in a prosecution for violation of section 4502, subdivision (a).  The jury instruction defined a sharp instrument as "an instrument that can be used to inflict injury and that is not necessary for the inmate to have in his possession." (*Hayes,* at p. 555, italics omitted.)  The appellate court found the instruction erroneous, noting that a baseball bat would constitute a sharp instrument using the definition provided to the *Hayes* jury.  (*Id.* at p. 560.)  The appellate court held the jury must find the object in question was "sharp," as that term is commonly understood, before it could convict a defendant of violating section 4502.  "We think it obvious that, to be a 'sharp instrument' under section 4502, the object must be sharp.  This does not necessarily mean the object

5.

must have a cutting blade, like a knife or razor blade.  A pointed object may qualify as 'sharp.'  This appeal does not require us to define all ways in which an instrument may be 'sharp.'  We merely observe that among the ways in which items can be sharp are sharpened points as well as cutting blades." (*Hayes,* at p. 560.)

Zepeda claims there was insufficient evidence the razor blade was "sharp," as that term is commonly used.  Specifically, he asserts the razor blade was so dull that it did not constitute a sharp instrument.  He points out his expert opined the item was not sharp, and the expert could not cut paper when he attempted to do so.  He also argues that since the razor blade did not have a handle, it could not be used as a weapon.  Zepeda acknowledges, however, the People's expert testified the razor blade would be an effective weapon if used in a slashing manner.

The testimonies of the experts certainly were in conflict.  Zepeda asserts, however, if we examine the razor blade, we also will conclude the razor blade was not a sharp instrument.  The object was transferred to this court at Zepeda's request.

It is the jury's function to determine the facts of the case, and we are not permitted to reverse a judgment unless this factual determination is not supported by substantial evidence.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  In this case, the testimony presented by the People constituted substantial evidence, even though the evidence would have supported a different conclusion.  We do not resolve evidentiary conflicts, however.  We look only for substantial evidence.  (*Ibid.*)  To rule in Zepeda's favor, we would have to conclude as a matter of law that this razor blade was not a "sharp" instrument.

Nonetheless, we have examined the razor blade in question.  Undoubtedly, this razor blade is dull -- *for a razor blade*.  Since it is a razor blade, it also is very flexible.  We are convinced, however, that it is "sharp" within the meaning of section 4502 and certainly could cause severe injury if used as a weapon.  Accordingly, we conclude the judgment was supported by substantial evidence.

**III.    Exclusion of the Testimony of Inmate Rudy Minjarez**

Zepeda proposed to call as a defense witness inmate Rudy Minjarez. In response to the trial court's request for an offer of proof, defense counsel stated Minjarez would testify about a previous incident involving Greager.

Minjarez, also a level four inmate, was taking a shower. While attempting to shave, the razor broke and the razor blade fell out. Minjarez gave the razor blade to the correctional officer monitoring his shower. The correctional officer took the blade and left Minjarez in the shower. Minjarez was arrested and taken from the shower to the dining hall where he was told he was being arrested for possession of a razor blade. Furthermore, Minjarez was told the razor blade was found in the light fixture in his cell. According to defense counsel, the correctional officer to whom Minjarez gave the razor blade was Greager.

Also, Minjarez would explain that at the disciplinary hearing for possession of the razor blade in his cell, Greager testified the razor blade found in the light fixture in Minjarez's cell was the same razor blade Minjarez had given to Greager when Minjarez was shaving in the shower. Minjarez was further expected to testify he prevailed at the disciplinary hearing because he established he had not been to his cell between the time he gave Greager the razor blade in the shower and when the razor blade allegedly was discovered in his cell, the implication being Greager had planted the razor blade in Minjarez's cell and then "discovered" it to subject Minjarez to discipline.

Finally, Minjarez was expected to testify he reviewed the cell search log book and discovered the cell was not searched before he was moved into the cell, apparently a second reason Minjarez prevailed at the disciplinary hearing. Defense counsel argued this evidence was intended to attack Greager's credibility.

The prosecution responded with its understanding of the situation involving Minjarez. Minjarez's cell was searched by Greager approximately one year before Zepeda's cell was searched. During the search, Greager found a razor blade in the light

fixture in the cell. Greager wrote up a rules violation report for possible discipline. The prosecution admitted it had not thoroughly investigated the incident. From the information the prosecutor had seen, however, it appeared Minjarez was not disciplined because the razorblade was disposed of before a hearing could be held on the alleged rule violation.

The prosecutor argued Minjarez's testimony was not relevant. If the trial court permitted Minjarez to testify, the prosecutor requested some additional time to obtain the records of the incident, including the records from the disciplinary hearing, so she could cross-examine Minjarez effectively and rebut his testimony.

The trial court sustained the People's objection, concluding the proposed testimony about the incident was not relevant and the probative value of the proposed evidence substantially was outweighed by the probability that its admission would necessitate an undue consumption of time pursuant to the provisions of Evidence Code section 352. Zepeda contends the trial court erred in excluding the evidence.

A trial court has broad discretion to exclude evidence under Evidence Code section 352. (*Ibid.*; *People v. Linton* (2013) 56 Cal.4th 1146, 1181.) We review such rulings for an abuse of that discretion. (*Linton,* at p. 1181.) We conclude the trial court did not abuse its discretion in excluding Zepeda's proffered evidence.

We begin with the limited scope of Minjarez's proposed testimony. He could have testified he broke his razor while shaving and gave the razor blade to Greager. He also could have testified he was accused of having a razor blade in his cell and a disciplinary hearing was held. He also could have testified he was not disciplined as a result of this proceeding. However, that is all to which he could have testified. He had no personal knowledge about who allegedly searched his cell, and any statement made at the disciplinary hearing would be hearsay.

In addition, what occurred at the disciplinary hearing was unclear. The expected testimony about what occurred at the hearing presented by the two attorneys varied

8.

greatly. While the version of events suggested by defense counsel possibly could be used to impeach Greager, the version of events suggested by the prosecution would render the entire subject irrelevant.

Finally, the amount of time required to present the proffered evidence would have lengthened the trial significantly. The prosecution would have been entitled to a delay to obtain information related to the disciplinary hearing and the events that transpired. While Minjarez's testimony apparently would have been relatively short, the rebuttal testimony probably would have required several witnesses. Moreover, the trial would have been delayed to permit the prosecution to obtain the records from the facility, as well as to interview potential witnesses.

Considering the short duration of the trial, the trial court acted well within its discretion when it determined admission of the proffered testimony would result in an undue consumption of time. Since the proposed testimony had minimal relevance, the inevitable conclusion must be that no error occurred. Moreover, for the same reasons, this testimony does not implicate the constitutional concerns that were raised in the cases cited by Zepeda (*Chambers v. Mississippi* (1973) 410 U.S. 284; *Crane v. Kentucky* (1986) 476 U.S. 683; *Rock v. Arkansas* (1987) 483 U.S. 44).

## IV.    Memorandum of Understanding

After the verdict, but before sentencing, Zepeda filed a motion seeking to compel discovery and in arrest of judgment. The basis of the motion was a memorandum of understanding (MOU) between the Kern County District Attorney's Office and CCI Tehachapi. Zepeda asserted the MOU may have had some impact on this prosecution; hence, discovery was sought to determine what, if any, application the MOU had on Zepeda. The only evidence of the contents of the MOU was a document contained in Zepeda's prison file that indicated a possible violation of section 4502 that occurred on May 26, 2005, was not referred to the district attorney for prosecution based on the terms of the MOU. The trial court denied the motion.

We begin with the statutory basis for the MOU. Inmate discipline is covered in title 15, division 3, chapter 1, subchapter 4, article 5 of the California Code of Regulations. As pertinent to our discussion, when prisoner misconduct is believed to be a violation of law or "is not minor in nature," a rules violation report (CDCR form No. 115 [rev. 7/88]) must be completed. (Cal. Code Regs., tit. 15, § 3312, subd. (a)(3).) Each CDCR form No. 115 is then reviewed and classified as either administrative or serious pursuant to criteria set forth in the California Code of Regulations. (*Id.,* § 3313, subd. (a).) Administrative violations are resolved at a disciplinary hearing. (*Id.,* § 3314, subd. (b).) Serious violations subject the inmate to a disciplinary hearing, as well as referral for prosecution if the violation is a criminal offense. (*Id.,* § 3315, subd. (b).)

The regulation at issue here is California Code of Regulations, title 15, section 3316, which is entitled "Referral for Criminal Prosecution." Subdivision (a) of this regulation provides that all criminal misconduct by prisoners "shall be referred" to appropriate authorities for "possible investigation and prosecution" if there is evidence supporting each element of the charged crime. Subdivision (b) of this regulation is an exception to the mandatory language of subdivision (a). As relevant, subdivision (b) provides that "criminal misconduct shall not be referred to the local district attorney if the local district attorney has submitted written notification to the institution head including criteria determining that specified crimes shall not be prosecuted if the crime involved meets such criteria."

Zepeda theorizes that since the May 26, 2005, violation of section 4502 was not referred to the district attorney "pursuant to the MOU," the MOU must contain written instructions from the Kern County District Attorney informing CCI Tehachapi the district attorney would not prosecute violations of Penal Code section 4502 pursuant to the terms of California Code of Regulations, title 15, section 3316, subdivision (b).

We first observe that Zepeda's theory is based on speculation, and we can conceive of many possible explanations for the evidence on which he relies being

10.

inconsistent with this theory. For example, the Kern County District Attorney may have stated that first offenses that could be prosecuted as a violation of section 4502 would not be prosecuted, but all subsequent offenses would be prosecuted. Nonetheless, we will proceed with our analysis on the assumption that Zepeda's theory is correct.

The issue is whether Zepeda's theory concerning the MOU entitles him to any type of relief. In the trial court, Zepeda argued his motion for arrest of judgment provided a basis for relief. In this court, Zepeda argues the trial court abused its discretion when it denied his motion to compel discovery. As grounds for the discovery, Zepeda argues the MOU may have created prosecutorial immunity to which he was entitled. Once examined, both arguments fail.

Section 1185 explains that a motion in arrest of judgment "is an application on the part of the defendant that no judgment be rendered on a … verdict against the defendant .…" The basis for such motion is "any of the defects in the accusatory pleading mentioned in Section 1004, unless the objection has been waived by a failure to demur .…" (*Ibid.*)

First, Zepeda did not demur, and therefore he has waived any defect in the information. Second, section 1185 does not apply to the argument raised by Zepeda. Section 1185 challenges the sufficiency of the information and can be based only on defects appearing on the face of the information. (*People v. Bittick* (1960) 177 Cal.App.2d 479, 483.) Zepeda's argument does not suggest the information was defective.

Moreover, none of the grounds listed in section 1004 applies. The only two possible grounds are subdivisions (1) and (4) of section 1004. Subdivision (1) provides relief if the information shows the trial court does not have jurisdiction. Nothing on the face of the information suggests the trial court lacked jurisdiction to try Zepeda. Subdivision (4) provides relief if the information failed to constitute a public offense. Our review of the information establishes Zepeda was properly charged, and he does not

11.

suggest otherwise. Accordingly, the trial court properly denied the motion in arrest of judgment.

Zepeda also contends the trial court erred in denying his motion for discovery because the MOU may have resulted in a grant of prosecutorial immunity. We first observe that this argument was not made in the trial court and therefore has been forfeited. (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.) Next, we note the prosecutor does not have authority to grant a defendant immunity; only the trial court has the authority to grant immunity. (§ 1324; *People v. Superior Court* (*Perry*) (1989) 213 Cal.App.3d 536, 539-540.) Moreover, none of the statutory requirements for immunity existed in this case. (§ 1324.) Since Zepeda was not entitled to immunity, there was no basis for compelling discovery of the MOU. The trial court did not err.

## V. Sentencing

At sentencing the trial court computed a new determinate term for Zepeda to reflect this conviction. The parties agree on the applicable law, but reach different results for the correct sentence in this case.

At the time of this conviction Zepeda was serving a sentence of 50 years to life for a 1999 first degree murder conviction that included a section 12022.53, subdivision (d) firearm enhancement. Zepeda was convicted and sentenced for violation of section 4502, subdivision (a) that occurred in June 2000. He also was convicted and sentenced for violation of section 4502, subdivision (a) that occurred in February 2009. These last two convictions each included, as did the conviction in this case, a true finding that Zepeda had suffered a prior strike conviction within the meaning of section 667, subdivisions (b) through (i).

The trial court imposed a consecutive term of 12 years, which consisted of eight years for the current conviction, two years for the 2000 offense, and two years for the 2009 offense.

California Rules of Court, rule 4.452(1) required the trial court to determine a single determinate term calculated as if all three cases had been sentenced in this proceeding. Penal Code Section 1170.1, subdivision (a) provides that when a defendant is convicted of two or more felonies, he must be sentenced to a principal term for the felony with the longest term of imprisonment, and then a subordinate term for each of the remaining felony convictions.

The sentencing triad for a violation of section 4502 is two, three, or four years. The trial court chose the present conviction as the principal term. It then chose the upper term of four years and doubled it because of the strike prior, for a total principal term of eight years. Next, the trial court chose one-third the midterm for the two remaining felonies, which would be one year each. This one year was then doubled because of the strike prior, for a total of two years for each felony. The sentence for each conviction was imposed consecutively to the other, for a total term of 12 years. The 12-year sentence was imposed consecutively to the 1999 murder conviction. The result is a total determinate term of 12 years, precisely the term calculated by the trial court. There was no error.[3]

## VI. Abstract of Judgment

The parties agree the abstract of judgment must be reissued because it does not accurately reflect the judgment. Specifically, the abstract of judgment erroneously indicates the eight-year sentence consists of four years for the violation and a four-year enhancement. We will remand the matter to the trial court for the issuance of a new abstract of judgment.

---

[3]Although unclear, it appears defense counsel finds error because he believes there were two convictions in Monterey County, one for violation of section 4502, and another conviction that resulted in a term of four years. Our review of the record could identify only one Monterey County conviction, the conviction for violation of section 4502 (ignoring the 1999 murder conviction).

**DISPOSITION**

The judgment is affirmed.  The matter is remanded to the trial court for issuance of a new abstract of judgment, a copy of which shall be provided to all proper agencies.

_____
CORNELL, Acting P.J.


WE CONCUR:


_____
GOMES, J.


_____
POOCHIGIAN, J.

14.