Filed 3/16/15  P. v. Gaston CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C074840 |
| Plaintiff and Respondent, | (Super. Ct. No. SF122590B) |
| v. | |
| EDWARD CHARLES GASTON, | |
| Defendant and Appellant. | |

In February 2013, defendant Edward Charles Gaston pled guilty to shooting at an occupied motor vehicle.  In exchange, several related counts and allegations were dismissed.  Defendant was sentenced to prison for the middle term of five years. Execution of sentence was suspended and defendant was placed on probation for five years on conditions including incarceration for 360 days with credit for 41 days.

In June 2013, an affidavit was filed alleging that defendant violated his probation by failing to obey all laws.  Specifically, it was alleged that defendant had violated Penal

Code[1] section 4502, subdivision (a), by possessing an instrument while incarcerated. Following a contested hearing in July 2013, defendant was found to have violated his probation. In September 2013, the trial court ordered execution of the prison sentence.

On appeal, defendant contends: (1) the trial court abused its discretion when it found that the possessed object, a bolt with a nut on each end, was a "dirk or dagger" within the meaning of section 4502; and (2) the court violated his due process rights when it revoked his probation without sufficient evidence of a probation violation. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The facts of the underlying offense are not at issue and need not be set forth in this opinion.

On May 31, 2013, San Joaquin County Sheriff's Correctional Officer Albert Carter noticed defendant sitting in the bunk bed area of a barracks at the Honor Farm. Defendant was showing an item to another inmate. As Officer Carter approached the area, defendant placed the item in the waistline of his pants.

Officer Carter asked defendant to pull out his shirt from his pants. Defendant pulled out a white sock from his waistline and tossed it onto a bunk. Inside the sock was a metal bolt, approximately nine inches long, with threading on each end and a nut screwed onto each thread. The nuts were round and were not filed down or sharpened. However, the instrument could be rendered sharper by removing the nuts. A photograph of the instrument was admitted into evidence. (Exhibit A.)

Officer Carter testified that the object was "a start of a tool to be transposed to a weapon or to make-shift to a weapon."

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

Defendant's counsel argued to the trial court, "I don't think the evidence supports the idea that it's a sharp instrument.  The ends are rounded and nobody took off the bolts [*sic*; nuts] to see what it looks like, and all that was visible was normal threading."

In its ruling, the trial court stated:  "I'm going to find [defendant] in violation of probation and hold him to answer for the following reasons:

"When I looked at this photograph of the instrument, and before [the prosecutor] made her argument, I'm thinking of that going through my eye, and that going into my eye, it's going to cause me great bodily injury.

"It's not going to cause me great bodily injury as a sharp object, because while I suppose if you take the nuts off and you rub the instrument across one's body, yes, you are going to cause a big scratch or a bruise; I don't think you are going to cause great bodily injury.  You take the nuts off one of these ends and poke somebody's eye, it can be used to stab.

"I will say, [defense counsel], your argument about the bread knife case gives me great cause to think.  Also, the fact that a dirk or dagger is described as a knife or other instrument.  This is far from a dirk or dagger or a knife, but it does appear to be capable to be used as a stabbing weapon.

"I think there's some validity to the argument made by [the prosecutor] that the same instrument might not be a deadly weapon under [former section] 12020 on the street, but it would be a dirk or -- would not be a dirk or a dagger, deadly weapon on the street, but it could very well be under [section] 4502.

"As to whether or not this is a matter of law, whether it is or is not a dirk or dagger, the Court also feels, considers the method in which it was possessed; in this case, apparently concealed in a sock.

"So with those comments, I am going to find that [defendant] possessed this item and that it is within the statute of a dirk or dagger."

3

DISCUSSION

I

*The Court Did Not Err Concluding The*

*Instrument Violated Section 4502, Subdivision (a)*

Section 4502, subdivision (a), provides in relevant part:  "Every person who, while at or confined in any penal institution . . . , possesses or carries upon his or her person or has under his or her custody or control any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, *any dirk or dagger or sharp instrument*, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon, is guilty of a felony and shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, to be served consecutively."  (Italics added.)

"Penal Code section 4502 specifically prohibits a prisoner from possessing 'any dirk or dagger or sharp instrument.'  The presence of the words 'or sharp instrument' suggests a legislative awareness of the limited meaning of dirk or dagger."  (*People v. La Grande* (1979) 98 Cal.App.3d 871, 873.)

Section 16470 defines " 'dirk' or 'dagger' " as "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon *that may inflict great bodily injury or death*.  A nonlocking folding knife, a folding knife that is not prohibited by Section 21510, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position."  (Italics added.)  The terms "dirk" and "dagger" are to be strictly construed.  (*People v. Bain* (1971) 5 Cal.3d 839, 850.)

Although the Legislature has defined a "dirk" or "dagger" as a weapon *that may inflict great bodily injury or death,* the Legislature has not limited section 4502, subdivision (a), to items capable of inflicting such injury.  Thus, for example, section

4

4502 prohibits a penal inmate from possessing a *sandbag* regardless of whether it is reasonably capable of inflicting death or great bodily injury.

Defendant contends the bolt with a nut on each end was not a dirk or dagger within the meaning of section 4502, subdivision (a), and the trial court's finding to the contrary was an abuse of discretion.

However, the People do not claim the item was a dirk or dagger; rather, they claim the trial court "simply found the instrument to fit within the much broader variety of instruments described in section 4502," specifically, the "broader array of 'sharp instruments' prohibited by section 4502."

Defendant replies that the trial court "specifically stated" that the disputed item "was not a sharp instrument" and then held, incorrectly, that the item was a dirk or dagger as a matter of law because it was a stabbing instrument.

We read the trial court's remarks differently: it acknowledged that the instrument was sharp, in that it could cause a scratch or bruise; but it found that the item would not cause great bodily injury. Section 4502 requires that the item be sharp but *does not require* that it be capable of causing great bodily injury.

A trial court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision." (§ 1203.2, subd. (a).) The narrow inquiry at a revocation hearing "is whether conditional release has been violated, and whether parole or probation should be terminated as a result." (*In re Eddie M.* (2003) 31 Cal.4th 480, 504.)

"The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. The evidence will be viewed in the light most favorable to the judgment, but the issue will be resolved in light of the whole record." (*People v. Pettway* (1991) 233 Cal.App.3d 1067, 1069, questioned on other grounds in *People v. Aubrey* (1999) 70 Cal.App.4th 1088, 1098, fn. 10.)

"We think it obvious that, to be a 'sharp instrument' under section 4502, the object must be sharp. This does not necessarily mean the object must have a cutting blade, like a knife or razor blade. A pointed object may qualify as 'sharp.' This appeal does not require us to define all ways in which an instrument may be 'sharp.' We merely observe that among the ways in which items can be sharp are sharpened points as well as cutting blades." (*People v. Hayes* (2009) 171 Cal.App.4th 549, 560.)

Defendant argues that the trial court "specifically stated that the item in [defendant's] possession was not a sharp instrument." We disagree.

The trial court stated that the object was "not going to cause me great bodily injury as a sharp object, because while I suppose if you take the nuts off and you rub the instrument across one's body, yes, you are going to cause a big scratch or a bruise; I don't think you are going to cause great bodily injury."

We do not read these remarks as a finding that the "item . . . was not a sharp instrument." Although ability to cause great bodily injury is a necessary characteristic of a "dirk or dagger," it is not a necessary characteristic of a "sharp instrument."

This court has held that, "to be a 'sharp instrument' under section 4502, the object must be sharp. This does not necessarily mean the object must have a cutting blade, like a knife or razor blade. A pointed object may qualify as 'sharp.' " (*People v. Hayes*, *supra*, 171 Cal.App.4th at p. 560.)

The present case involves the "pointed" edges of the screw threads machined onto each end of a metal bolt. The trial court impliedly found that, if the pointed screw thread edges are "rub[ed] . . . across one's body," the instrument would "cause a big scratch or a bruise." Defendant has not separately addressed this portion of the trial court's remarks or furnished argument or authority for the proposition that the screw threads are insufficiently sharp to constitute a "sharp instrument" within the meaning of section 4502.

6

In any event, our examination of the photograph of the bolt supports the trial court's implied finding that the nuts could be removed and the exposed threads used to inflict a scratching or bruising injury. Surely it also could be used to poke someone in the eye. Viewing the whole record in the light most favorable to the judgment, we conclude there was substantial evidence of a probation violation consisting of a failure to obey section 4502. (*People v. Pettway*, *supra*, 233 Cal.App.3d at p. 1069.)

## II

### *Defendant's Due Process Contention*

In a supplemental brief, defendant contends the revocation of his probation violated his Fourteenth Amendment due process rights because the revocation was not supported by sufficient evidence that he had violated his probation.

Defendant reasons that the evidence of violation was insufficient because "[t]he item in [his] possession was not a dirk or dagger as a matter of law." We have already rejected that contention and concluded the evidence of violation of probation was sufficient. We thus reject defendant's due process contention.

## DISPOSITION

The judgment is affirmed.

                                          _____ROBIE_____, Acting P. J.

We concur:

_____MURRAY_____, J.

_____HOCH_____, J.

7