Filed 11/3/20  P. v. Beltran CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B300627 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA192660) |
| v. | |
| FRANCISCO BELTRAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Curtis B. Rappe, Judge.  Affirmed.

Fay Arfa for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2002, a jury found defendant and appellant Francisco Beltran guilty of first degree murder (Pen. Code, §§ 187, 189),[1] with the special circumstance of intentional murder by discharging a firearm from a motor vehicle at another person with the intent to inflict death (§ 190.2, subd. (a)(21)).  The jury also found true a gang enhancement (§ 186.22, subd. (b)(1)) and the intentional discharge of a firearm by a principal causing death enhancement (§ 12022.53, subds. (d) & (e)(1)).  He was sentenced to life without the possibility of parole, plus 25 years to life for the discharge of a firearm.  Defendant appealed his conviction, and on August 18, 2004, we affirmed the judgment. (*People v. Beltran* (Aug. 18, 2004, B161809) [nonpub. opn.], p. 1 (*Beltran I*).)

Defendant filed a petition for resentencing pursuant to section 1170.95, and the trial court set the matter for an evidentiary hearing.  The trial court denied the petition, finding it clear beyond a reasonable doubt that defendant was convicted as a direct aider and abettor.

Defendant timely filed a notice of appeal, challenging the trial court's order denying his petition for resentencing.

We affirm.

## FACTUAL BACKGROUND

"Viewed in accordance with the usual rule of appellate review [citation], the evidence established that F.T., age 20, a Primera Flats gang member, lived with his mother, E.T., and five younger siblings in an upstairs apartment in the triplex located on South Adair Street in Los Angeles.  At approximately

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

9:30 p.m. on August 6, 1999, F.T., one of his twin sisters, E.G., neighbors, and other gang and nongang member youths were congregated in the triplex's front yard. Rival Ghetto Boyz street gang members codefendant Alberto 'Gremlin' Orozco (Orozco) and [defendant], who was known as 'King,' drove by on 22nd Street in a beige Ford Aerostar van. Shortly thereafter, Orozco and [defendant] drove by again, this time driving a green Intrepid-type car.

"About 10 or 15 minutes later, Orozco and [defendant] drove down Adair Street, this time in a white or light-brown sedan. Eight-year-old, mildly-retarded S.P. had just walked downstairs from F.T's apartment. S.P. was standing in front of the triplex next to 14-year-old Primera Flats gang member J.E. The Ghetto Boyz's sedan slowed. Orozco put his torso out the front passenger window and repeatedly fired what looked like a nine-millimeter handgun at the car F.T. drove, at F.T., and then at J.E. During the shooting, [defendant] was sitting in the sedan's rear seat looking out the passenger-side window. He shouted, 'F---Flats' and 'Ghetto.'

"When the shooting started, J.E. pushed eight-year-old S.P. to the ground. However, when Orozco started shooting at J.E., J.E. stood up to run. S.P. followed J.E., and a bullet pierced S.P.'s head through-and-through from eyebrow to ear, fatally wounding him. The sedan sped off.

"After the shooting, F.T.'s mother, E.T., came downstairs. She told F.T. and his peers that they should leave as the police were coming. As the responding Los Angeles Police Officers arrived, one officer stopped F.T., J.E., and four other youths as they were leaving the shooting scene and interviewed them.

3

"After the shooting, on the street, the police recovered a spent .380-caliber casing and four spent .357-caliber SIG casings. Several months later, upon Orozco's arrest, the police discovered a beige Windstar van parked at Orozco's residence. The van was registered to his brother.

"A police officer gang expert testified that since 1997, the Primera Flats and Ghetto Boyz gangs had been engaged in a turf war over a park on 25th Street, which had resulted in a number of shootings and killings. In a hypothetical, the expert gave his opinion that the instant shooting was a gang-related drive-by shooting in which the occupants of the sedan intended to kill rival Primera Flats gang members. In that neighborhood, 22nd Street was not a thoroughfare, and driving by before the shooting was either a gang challenge or an effort to scout out the triplex, a well-known Primera Flats hangout. The expert explained that during a drive-by shooting, gang members accompany a gunman for bragging rights, to assist the gang, and to be present to physically assist the shooting.

"To avoid prosecution, gang members systematically terrorize witnesses and their families. The expert explained that it was common for persons living in gang communities to refuse to cooperate with the authorities. Even if such persons made an out-of-court report to the police, if called as witnesses during a prosecution, it was not unusual for them to recant. As a matter of pride, gang members do not cooperate with the authorities, even for the purpose of jailing a rival gang member. The expert also testified to evidence supporting the gang enhancement.

"At trial, the events of the shooting were established by a neighbor's eyewitness testimony and by E.G.'s, J.R.'s, and J.E.'s extrajudicial statements to Los Angeles Detectives Augustine

4

Caballero and Rudy Flores. At trial, E.G., J.R., and J.E. testified to the events surrounding the shooting. However, apparently by reason of gang loyalty, fear of retaliation, or parental pressure not to cooperate, they recanted when asked about the details of the shooting itself and would not identify the assailants.

"E.G. testified that in her neighborhood, there are many rival street gangs and gang shootings. She corroborated that her brother F.T. was a Primera Flats gang member and that the Primera Flats gang and the Ghetto Boyz street gang were enemies. J.R. agreed during his testimony that the Ghetto Boyz and Primera Flats gangs did not get along.

"[Defendant] and Orozco[, who was tried with defendant,] did not testify. In defense, counsel called two witnesses to testify to several extrajudicial statements J.E. made with respect to an unrelated gang shooting case and with respect to this case acknowledging that he had falsely identified the gunmen to curry favor with authorities. Orozco called two alibi witnesses, who testified that when S.P. was shot, Orozco was attending a family party." (*Beltran I*, *supra*, B161809, at pp. 2–5, fns. omitted.)

## PROCEDURAL BACKGROUND

### I. *Defendant's section 1170.95 petition*

On February 14, 2019, defendant, in propria persona, filed a petition to be resentenced pursuant to section 1170.95. Counsel was appointed to represent him.

The People filed a response to the petition, arguing that (1) section 1170.95 is unconstitutional, and (2) defendant is ineligible for relief because the jury's true finding on the drive-by murder special circumstance means that it found defendant acted with specific intent to kill.

Defendant filed a reply to the People's response.

5

II. *Hearing on defendant's petition*

On May 28, 2019, the trial court issued an order to show cause, and on July 26, 2019, it held a hearing pursuant to section 1170.95, subdivision (d)(3). The parties declined the trial court's invitation to present additional evidence.

Defense counsel then argued that defendant was convicted under the natural and probable consequences doctrine and thus could not be convicted today in light of the changes made to the law of murder. Counsel maintained that the evidence was clear that defendant was not the shooter and that he aided and abetted an assault.

The trial court pointed out that defendant was not necessarily convicted of first degree murder based on the natural and probable consequences doctrine because the jury found true the drive-by murder special circumstance, which requires proof of intent to kill. In response, defense counsel argued that the jury was instructed on multiple theories, one of which was the natural and probable consequences doctrine.

The prosecutor argued that the drive-by murder theory of first degree murder remains unchanged by Senate Bill No. 1437's amendments to sections 188 and 189. The prosecutor further remarked that the trial court had instructed the jury that the drive-by murder special circumstance required intent to kill, and the jury found the special circumstance to be true.

After defense counsel presented additional argument, the trial court stated that the People were required to prove that defendant "could be convicted" of murder under the new law. Defense counsel replied that the "standard is what the jury would have found." The trial court corrected defense counsel, stating: "No. What they could find. It's 'could,' not 'what they did find.'"

6

Defense counsel replied: "Okay. He could not be convicted. Okay. [¶] Well, again, the prosecution would have to prove its case beyond a reasonable doubt." The trial court agreed.

III. *Trial court order*

Thereafter, the trial court issued a written order denying defendant's petition for relief. The order indicates that the trial court had reviewed its file, including the appellate opinion and relevant jury instructions, copies of which are attached to the order.

The trial court explained its reasoning as follows: "Based on these matters and the court's recollection of the trial evidence, the court hereby denies the petition because it is clear beyond a reasonable doubt that (1) [defendant] was convicted as a direct aider and abettor on the first degree murder charge since his conviction of first degree murder and the true finding on the drive-by shooting special circumstance, both of which require a specific intent to kill, make it clear beyond a reasonable doubt, under the facts of this case, that the jury found him guilty of malice murder, and (2) [defendant] was not convicted under a theory of felony-murder of any degree, or (3) under a theory of natural and probable consequences. Therefore, as shown by the facts in the case and as detailed by the [C]ourt of [A]ppeal, [defendant] was only convicted of first degree murder with the specific intent to kill. It follows that he still could be convicted of first degree murder under the current law after Senate Bill 1437 went into effect on January 1, 2019." (Fns. omitted.)

The trial court also noted that the murder grew out of a gang rivalry, that defendant and fellow gang members drove by a gang rival's known hangout multiple times, and that during the

shooting, defendant looked out the window and shouted, "'F-Flats'" and "'Ghetto.'"

Furthermore, in concluding that the jury necessarily found that defendant acted with intent to kill, the trial court cited *People v. Chavez* (2004) 118 Cal.App.4th 379, 385–386, and observed that the drive-by murder special circumstance requires proof that an aider and abettor acted with intent to kill. The trial court also pointed out that no jury instructions were given on the felony murder doctrine, and that such instructions would have been inapplicable under the facts of the case. "Rather, this was a simple gang drive-by shooting with intent to kill a rival gang member."

Finally, the trial court emphasized that the jury was instructed with CALJIC No. 8.80.1 that to find the special circumstance true as to an aider and abettor, it had to find that the defendant acted with intent to kill.

## DISCUSSION

### I. *Standard of Review*

To the extent we are called upon to interpret section 1170.95, subdivision (d), we review the trial court's order de novo. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts]; *Stennett v. Miller* (2019) 34 Cal.App.5th 284, 290 [statutory interpretation].)

To the extent we determine whether the trial court's order denying defendant's section 1170.95 petition after an evidentiary hearing is supported by sufficient evidence, we "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable

8

doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also
*People v. Johnson* (1980) 26 Cal.3d 557, 576–578.)

II. *Relevant Law*

Section 1170.95 provides a mechanism whereby people
"who believe they were convicted of murder for an act that no
longer qualifies as murder following the crime's redefinition in
2019[] may seek vacatur of their murder conviction and
resentencing by filing a petition in the trial court." (*People v.
Drayton* (2020) 47 Cal.App.5th 965, 973.)

In order to obtain resentencing relief, the petitioner must
file a facially sufficient section 1170.95 petition and then satisfy
two prima facie tests to demonstrate that he potentially qualifies
for relief, thereby meriting an evidentiary hearing. (§ 1170.95,
subd. (c).)

At the evidentiary hearing, the parties may rely upon
evidence in the record of conviction or new evidence to
demonstrate whether the petitioner is eligible for resentencing.
(§ 1170.95, subd. (d)(3).) The prosecution bears the burden of
proving, "beyond a reasonable doubt, that the petitioner is
ineligible for resentencing." (§ 1170.95, subd. (d)(3).) If the
prosecution cannot meet its burden, and the petitioner prevails,
he is entitled to vacatur of the murder conviction and
resentencing as set forth in section 1170.95, subdivision (e).

III. *Trial Court Properly Denied Defendant's Petition for
Resentencing*

A. Defendant was convicted as a direct aider and abettor

The changes made after the enactment of Senate Bill
No. 1437 "did not . . . alter the law regarding the criminal
liability of direct aiders and abettors of murder because such
persons necessarily 'know and share the murderous intent of the

9

actual perpetrator.' [Citations.] One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598.) Here, at the evidentiary hearing, the trial court determined that the prosecution proved beyond a reasonable doubt that defendant was ineligible for resentencing because the jury convicted him under a theory that he actually aided and abetted the murder.[2] And ample evidence supports this determination.

Guilt as a direct aider and abettor requires: (1) knowledge of the direct perpetrator's intent to commit the crime; (2) intent to assist in committing the crime; and (3) conduct that in fact assists in committing the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) The defendant must not only know the direct perpetrator's intent, he must share that intent. (*Id.* at p. 1118.)

Here, defendant and his fellow gang members drove by a house where members of a rival gang lived and hung out. They returned 15 minutes later in a different vehicle. Their vehicle slowed down to allow Orozco to place his torso out of the front passenger window and fire a gun multiple times in the direction of the victims. While Orozco did so, defendant sat in the rear seat of the vehicle, looking out the passenger side window, and

---

[2] We reject defendant's claim that the trial court improperly placed the burden of proof at the evidentiary hearing on defendant. The express language in the trial court's order confirms that the People bore the burden to prove beyond a reasonable doubt that defendant could be convicted under the amended statutes.

shouted "'F---Flats' and 'Ghetto.'" (*Beltran I*, *supra*, B161809, at p. 3.) Defendant's presence in the car provided backup for the shooter in case they encountered resistance. His intent to kill can be inferred from the fact that he was with fellow gang members in a rival gang's territory, their car slowed down to commit the shooting, and defendant looked out the window as he shouted his gang's name. Defendant encouraged the shooting by shouting his gang's name as the shooting occurred, which also served to instill fear in the community by promoting his gang.

In other words, the trial court correctly observed that "this was a simple gang drive-by shooting with intent to kill a rival gang member." It follows that there was substantial evidence from which a rational trier of fact could conclude beyond a reasonable doubt that defendant directly aided and abetted the murder.

B. Jury instructions and the special circumstance finding

1. *CALJIC No. 8.80.1*

Notably, the jury was instructed pursuant to CALJIC No. 8.80.1, which provides in relevant part: "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: intentional discharge of a firearm from a motor vehicle.

"The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶]

"If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you

11

cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree."

The People's theory at trial was that defendant was not the actual shooter.[3]  Rather, he was a passenger in the car that drove by the victim multiple times, and at the time of the shooting, defendant yelled his own gang's name as well as the rival gang's name.  Given that the jury was instructed with CALJIC No. 8.80.1, the jury's true finding on the drive-by murder special circumstance establishes that the jury found that defendant acted with intent to kill in aiding and abetting the murder.  (See, e.g., *People v. Gomez* (2020) 52 Cal.App.5th 1, 8–9 [jury's true finding on robbery and kidnapping special circumstances rendered the petitioner ineligible for relief as a matter of law under section 1170.95 because the jury necessarily found that she either intended to kill the victim or was a major participant in those crimes who acted with reckless indifference to life].)

Contrary to defendant's assertion, our prior opinion in *Beltran I* expressly acknowledged that the jury's true finding on the special circumstance encompassed a finding that defendant acted with intent to kill.  (See *Beltran I, supra,* B161809, at p. 28.)  After rejecting defendant's claim that the instructions on aiding and abetting were misleading and unconstitutional, we held:  "Furthermore, even if we were to conclude that the aiding

---

[3]     The fact that the prosecutor conceded that defendant was not the actual shooter does not mean that defendant only intended to aid and abet an assault with a deadly weapon.

12

and abetting instructions were misleading and unconstitutional, the finding with respect to the special circumstance that the aider and abettor acted with the intent to kill (§ 190.2, subd. (c)) renders any deficit in the instructions harmless under state and federal standards." (*Beltran I, supra*, B161809, at p. 28.) And it is well-settled that a trial court may rely upon an opinion on direct appeal in determining whether a petitioner is ineligible for resentencing as a matter of law. (§ 1170.95, subd. (d)(3) [at the evidentiary hearing, "[t]he prosecutor . . . may rely on the record of conviction" to meet its burden]; *People v. Lewis, supra*, 43 Cal.App.5th at p. 1136, fn. 7 ["The record of conviction includes a reviewing court's opinion"].)

### 2. *CALJIC No. 3.02*

Urging us to reverse, defendant argues that because the trial court instructed the jury on the now invalid natural and probable consequences doctrine (CALJIC No. 3.02), his conviction must be reversed. The problem for defendant is that he presumes that the jury convicted him of first degree murder as a natural and probable consequence of assault with a deadly weapon. But, after consideration of the trial evidence and counsel's arguments, the trial court found otherwise; it determined that defendant was convicted as a direct aider and abettor. And, as set forth above, this finding is well supported. Thus, the fact that the jury was instructed with CALJIC No. 3.02 does not compel reversal.

### C. Claim of instructional error

Defendant argues that his conviction must be reversed because the trial court issued defective jury instructions on the special circumstance. Defendant failed to raise this claim on appeal from his judgment of conviction, and he is not permitted

13

to raise them now.  (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1138 ["'In general, an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment'"].)  In other words, defendant's claim of instructional error is beyond the scope of this appeal from an order denying his section 1170.95 petition.  If anything, it must be raised in a petition for writ of habeas corpus.  (*People v. Salcido* (2008) 44 Cal.4th 93, 172.)

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


14