[No. F034110. Fifth Dist. May 3, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCOS CHAVEZ et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Under California Rules of Court, rules 976(b) and 976.1, only the introduction, Procedural and Factual Histories, part I, and the Disposition are certified for publication.

## COUNSEL

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant Marcos Chavez.

Deanna F. Lamb, under appointment by the Court of Appeal, for Defendant and Appellant Jaime Guzman.

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant Alejandro Prado.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WISEMAN, J.**—This case involves the shooting, by occupants of a car, of a group of youths in another car. As a result, a young woman was killed and two others suffered gunshot wounds. The three appellants were each charged with one count of first degree murder pursuant to the first degree drive-by murder statutes (Pen. Code, §§ 189, 190.2, subd. (a)(21)), four counts of attempted willful, deliberate, and premeditated murder, and related charges. The appellants were convicted of all the charges and sentenced to life without the possibility of parole for the first degree murder charges; they received additional sentences on the other charges. In this appeal, appellants argue, among other things, that the jury was instructed incorrectly on the drive-by murder charges.

We affirm in part and publish to clarify the proper instruction of juries regarding charges based on the first degree drive-by murder statutes. In the published portion of this opinion, we conclude that first degree drive-by murder is not felony murder, and that although premeditation is not required to establish the crime, a specific intent to kill is required. The jury was not properly instructed on these issues, but the error was harmless. In the unpublished sections, we decide that the jury was properly instructed in other respects or that instructional error was harmless; that the sentences of life without the possibility of parole imposed here were not cruel or unusual; that the jury was not required to agree on a single theory of murder; and that certain sentence enhancements were properly imposed. But we stay improper four- and eight-month enhancements imposed on appellant Chavez and strike a fine improperly imposed on him.

### *PROCEDURAL HISTORY*

An information was filed October 15, 1998, charging Marcos Chavez (Chavez), Jaime Guzman (Guzman), and Alejandro Prado (Prado) (appellants) with multiple felonies. In count 1, appellants were charged with the murder of Marlene Romero in violation of Penal Code section 187.[1] It was alleged that the murder was intentional and perpetrated by discharging a firearm from a motor vehicle with the intent to inflict death within the meaning of section 190.2, subdivision (a)(21). Counts 2, 3, 4, and 5 charged appellants with the attempted premeditated and deliberate murders of Ray P., Shalisa H., Celeste M., and Joseph A. in violation of sections 664 and 187. Appellants were charged in count 6 with discharging a firearm from a motor vehicle in violation of section 246.

In count 7, Chavez was charged with permitting the discharge of a firearm from his vehicle in violation of section 12034, subdivision (b). With respect to counts 1 through 5, it was alleged that Prado and Guzman personally used

---

[1] All further statutory references will be to the Penal Code unless otherwise stated.

a firearm within the meaning of section 12022.5, subdivision (a)(1), and that they discharged a firearm from a motor vehicle causing great bodily injury within the meaning of section 12022.5, subdivision (b)(1). As to counts 1 through 5, it was alleged that Chavez was armed with a firearm within the meaning of section 12022, subdivision (a)(1). With respect to count 2, Guzman was alleged to have personally inflicted great bodily injury within the meaning of section 12022.7. Finally, as to count 3, it was alleged that Prado personally inflicted great bodily injury within the meaning of section 12022.7.

A jury returned guilty verdicts on all counts and found all special allegations to be true. Each appellant received a sentence of life without the possibility of parole on count 1 and four consecutive sentences of life with the possibility of parole on counts 2, 3, 4 and 5. A number of sentence enhancements were also imposed on each appellant.

### *FACTUAL HISTORY*

Marlene Romero was shot in the head about 12:45 a.m. on November 23, 1997, as she, Ray, Shalisa, and Celeste rode with Joseph in Joseph's father's Dodge Neon on Highway 65. Marlene died at a hospital the same morning. Ray and Shalisa also sustained gunshot wounds.

The shots were fired from a Honda Civic that pulled alongside the Neon on the highway. Chavez drove the Civic and Guzman and Prado were passengers. A Honda Accord, driven by Prado's cousin (also named Alejandro, and referred to in the record as Big Alex), followed behind the Neon as the shootings occurred. Police investigators found gunshot residue on Prado and on the Civic and found Prado's fingerprints on the Civic. A shell casing from one of the two guns used in the shootings was found at Prado's house. Guzman and Chavez admitted to police that they were in the Civic; Chavez admitted that he drove it and that Guzman and Prado fired shots from it at the Neon. Guzman testified at trial that he had fired a gun out the window of the Civic during the encounter with the Neon. Celeste and Shalisa identified Prado and Guzman as the passengers in the Neon.

The shootings occurred several hours after another hostile encounter between occupants of the Civic and the Neon. As the two cars drove down a street, Big Alex, then in the Civic, had argued with Shalisa, whom he formerly had dated. Other occupants of the Civic shouted and gestured at Joseph as he drove. Chavez told police that he, Prado, and Guzman went out in the Civic to find the Neon later, shortly before the shootings occurred.

## *DISCUSSION*

### I. *The first degree murder instructions*

Section 187 defines the crime of murder as the "unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) Malice aforethought "may be express or implied." (§ 188.) "It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Ibid.*)

First degree murder was presented to the jury on two theories: premeditated and deliberated murder with express malice, and "drive-by" murder, or murder "perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death . . . ." (§ 189.) The jury also considered second degree murder on several theories.

On the first degree murder charges, the court gave the jury CALJIC No. 8.21 (1998 rev.), the felony-murder instruction, modified to specify "the crime of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle, when the perpetrator specifically intended to inflict death" as the predicate felony. This instruction states that a killing that occurs during the intentional commission of the predicate felony is first degree murder regardless of whether the killing is "intentional, unintentional, or accidental." The court gave a similar instruction on aider-and-abettor liability for felony murder based on CALJIC No. 8.27 (1998 rev.).

Appellants contend that these instructions were erroneous because the drive-by-shooting component of section 189 is not an enumerated felony under the felony-murder rule. They contend that section 189 is only to be used to fix the degree of murder after malice has been established. Because drive-by shooting is not an enumerated felony, appellants argue, the jury must find malice aforethought; but the felony-murder instruction does not require such a finding.

Respondent argues that the drive-by-shooting clause in section 189 is intended to operate as the functional equivalent of an enumerated felony under the felony-murder rule and that the court's instructions were correct. Alternatively, assuming the drive-by-shooting clause of section 189 does not define an enumerated felony for purposes of the felony-murder rule, respondent contends that the jury necessarily found malice. Consequently, respondent argues, appellants suffered no prejudice from the giving of the instructions.

We answer two questions: (1) Does the drive-by-shooting clause of section 189 define an enumerated felony within the felony-murder rule? (2) If not, did the court's felony-murder instructions constitute prejudicial error?

### A. Status of the drive-by-shooting clause of section 189

In *People v. Rodriguez* (1998) 66 Cal.App.4th 157, 163–164 [77 Cal.Rptr.2d 676], the court explains that section 189 establishes three categories of first degree murder: "Section 189 . . . first establishes a category of first degree murder consisting of various types of premeditated killings, and specifies certain circumstances (use of explosives or armor-piercing ammunition, torture, etc.) which are deemed the equivalent of premeditation. Section 189 secondly establishes a category of first degree felony murders (murders perpetrated during felonies or attempted felonies such as arson, rape, carjacking, etc.). Finally, section 189 establishes a third category consisting of only one item, intentional murder by shooting out of a vehicle with intent to kill." Respondent contends that a killing committed in the course of a drive-by shooting really belongs in the second category and adds to the list of enumerated felonies within the felony-murder rule. We disagree.

■ Under the felony-murder rule, a killing, whether intentional or unintentional, is first degree murder if committed in the perpetration of, or the attempt to perpetrate, certain serious felonies. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against the Person, § 134, p. 750.) The ordinary mental-state elements of first degree murder—malice and premeditation—are eliminated by the doctrine. The only criminal intent required to be proved is the specific intent to commit the particular underlying felony. (*Id.*, § 135, pp. 750–751.) Thus, the question before us is whether, in adding the drive-by-shooting clause to section 189 in 1993, the Legislature created an offense that constitutes murder but requires no particular mental state with respect to killing.

■ In interpreting section 189, our objective is "to ascertain and effectuate legislative intent." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) To the extent that the language in the statute may be unclear, we look to legislative history and the statutory scheme of which the statute is a part. (*People v. Bartlett* (1990) 226 Cal.App.3d 244, 250 [276 Cal.Rptr. 460].)

The Legislature's intent is unmistakable here. Although the drive-by-shooting clause appears immediately after the list of enumerated felonies in section 189, it is clear from the content of the clause that drive-by shooting is not part of that list. The drive-by-shooting clause requires an "intent to inflict death" which is never an element of felony murder. Several cases confirm that the Legislature meant what it said when it required an intent to kill in the

drive-by-shooting clause. (*People v. Rodriguez, supra,* 66 Cal.App.4th at p. 164, fn. 5 [section 189 requires that shooting out of vehicle be both intentionally at another person and with intent to inflict death]; *People v. Sanchez* (2001) 26 Cal.4th 834, 848–849 [111 Cal.Rptr.2d 129, 29 P.3d 209] [first degree murder established under section 189 where defendant fired out of vehicle intentionally, with specific intent to inflict death].) First degree drive-by murder under section 189 is not felony murder because it requires a mental state that felony murder does not require.

Although we have concluded that the meaning of section 189 is clear, in the event a reader has any doubt, he or she may easily extinguish it by looking at the legislative history. Senate Bill No. 310 was enacted in 1993, amending sections 189, 190, and 12022.5. (§ 189, as amended by Stats. 1993, ch. 609, § 1, p. 3265.) Senator Ruben Ayala introduced the bill, stating: ". . . Existing law describes murder of the 1st degree as all murders which, among other things, are committed in the perpetration of, or attempt to perpetrate, certain enumerated felonies and specified sex crimes. [¶] This bill would add to the list of specified crimes a murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death." (Legis. Counsel's Dig., Sen. Bill. No. 310 (1993–1994 Reg. Sess.) 5 Stats. 1993, Summary Dig., p. 236.)

When the bill was signed on September 29, 1993, Governor Pete Wilson's signature message heralded the fact that this amendment to section 189 "adds intentional drive-by killing to the first degree murder statute . . . ." (Historical and Statutory Notes, 47A West's Ann. Pen. Code (1999 ed.) foll. § 189, p. 93.) Expressly designed to curb violence, the message reiterated that the codification of "drive-by killing in the first degree murder statute allows prosecutors to convict drive-by assassins upon proof of a specific intent to kill." (*Ibid.*)

Although Senator Ayala's statement seems to add drive-by shooting to a list of other felonies, it also acknowledges there must be an "intent to inflict death." As a result, it is, by definition, different from the other listed felonies. Governor Wilson's message similarly recognizes the requirement of a specific intent to kill.

■ In sum, we hold that the drive-by-shooting clause added to section 189 in 1993 is not an enumerated felony for purposes of the felony-murder rule. We further conclude that although premeditation is not required to establish first degree murder under this clause, a specific intent to kill is required. And, as is well established, proof of an unlawful intent to kill is the

functional equivalent of express malice. (*People v. Swain* (1996) 12 Cal.4th 593, 601 [49 Cal.Rptr.2d 390, 909 P.2d 994].)

■ Accordingly, the court erred in giving felony-murder instructions on the first degree murder charges. In stating that the jury must find that the "perpetrator specifically intended to inflict death," but also that it was irrelevant whether the killing was "intentional, unintentional, or accidental," these instructions were inconsistent on the issue of whether the jury must find that the killings were intentional.

### B. *Prejudicial impact of giving felony-murder instructions*

■ Because they were inconsistent on the point of intent, the instructions given could have removed the mental-state element of the offenses from the jury's consideration. Therefore, federal due process is implicated, and the *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] beyond-a-reasonable-doubt standard for assessing prejudice applies. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130 [17 Cal.Rptr.2d 365, 847 P.2d 45]; *People v. Lee* (1987) 43 Cal.3d 666, 673–674 [238 Cal.Rptr. 406, 738 P.2d 752]; *People v. Self* (1993) 12 Cal.App.4th 1222, 1226–1227 [16 Cal.Rptr.2d 67], disapproved on other grounds in *People v. Martinez* (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].)

In assessing prejudice, we consider whether "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Yates v. Evatt* (1991) 500 U.S. 391, 402–403 [114 L.Ed.2d 432, 111 S.Ct. 1884], disapproved on other grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73, fn. 4 [116 L.Ed.2d 385, 112 S.Ct. 475]; *Chapman v. California, supra,* 386 U.S. at p. 24.) Further, "[t]o say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates v. Evatt, supra,* at p. 403; see *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279 [124 L.Ed.2d 182, 113 S.Ct. 2078] [proper *Chapman* inquiry is whether guilty verdict was surely not attributable to error].) The evidence must be " 'of such compelling force as to show beyond a reasonable doubt' that the erroneous instruction 'must have made no difference in reaching the verdict obtained.' " (*People v. Harris* (1994) 9 Cal.4th 407, 431 [37 Cal.Rptr.2d 200, 886 P.2d 1193], quoting *Yates v. Evatt, supra,* 500 U.S. at p. 407.) Employing this standard, we conclude the error was harmless.

Significantly, the correct murder instructions were also presented to the jury. CALJIC No. 8.10, which defines murder, was given as modified:

"The defendants are accused in Count 1 of the Information of the crime of murder, a violation of Penal Code Section 187. Every person who unlawfully kills a human being with malice aforethought or was perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, or it occurred during the commission of the crime of shooting at an occupied vehicle which is a felony inherently dangerous to human life, is guilty of the crime of murder, a violation of Penal Code section 187. [¶] A killing is unlawful if it was neither justifiable nor excusable. In order to prove the crime of murder, each of the following elements must be proved: One, a human being was killed; two, the killing was unlawful; three, the killing was done with malice aforethought or was perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death or occurred during the commission of a felony inherently dangerous to human life." In addition, CALJIC No. 8.25.1 was given, which states: "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally and at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree."

Other instructions given include CALJIC No. 3.31, concurrence of act and specific intent, and CALJIC No. 3.31.5, which defines mental state. Malice aforethought was defined in CALJIC No. 8.11; deliberate and premeditated murder was defined in CALJIC No. 8.20. Also included were CALJIC No. 3.01, defining aiding and abetting and the requirement that the aider and abettor act with knowledge of the unlawful purpose of the perpetrator and with the intent of committing or encouraging the commission of the crime.

In addition, closing arguments to the jury are relevant in evaluating prejudice. (See *People v. Lee, supra,* 43 Cal.3d at p. 677.) Here, the prosecutor's closing argument stressed the essential requirement of an intent to kill in order to convict of first degree murder:

"With respect to first degree murder, there is express malice first degree murder, things that you look for with respect to express malice first degree murder are the number of bullets that went into this particular vehicle, the location of where the bullet holes were, the hunting down of the victims. . . .

"The reason that the prosecution spent a significant amount of time with respect to what occurred prior to the actual shooting, is to show the intent of these three defendants, the intent to go after these victims, to hunt them down, loaded with weapons in their car, and to kill them.

"With respect to first degree express malice, premeditation means it has to be considered beforehand. There's no timetable. The law does not say they have to think about it for 30 minutes before they do it. You have to take a look at all the factors that exist prior to the shooting, prior to this killing. Deliberations weighs—when an individual weighs the pros and cons having the consequences in mind, decides to and does kill.

"Premeditation and deliberation, it's not a duration of time, but it's an extent of the reflection. Again, I know all of these things are coming in. You have to try to look at the instructions and it will tell you what premeditated, deliberated first degree murder is.

"The issue as to the intent to kill can be arrived at in a short period of time. Again, going back to the facts of this case, what led up to this killing, is extremely significant. But you can also take into consideration when determining whether an individual is guilty of first degree murder the actual shooting, the actual killing itself. Again, the reason that Steven O'Clair from Department of Justice came down and spent a significant amount of time with respect to where the bullet holes were in the car, which bullet hit which person, the opinion that he stated as to how many guns were used, all of that information is extremely significant and extremely relevant in determining whether an individual intended to kill someone, whether these defendants intended to kill someone."

The prosecutor also accurately told the jury that if it found appellants guilty of first degree murder, it had to next find the alleged special circumstances to be true. The prosecutor emphasized that three elements had to be proven beyond a reasonable doubt. These include discharging a firearm from a motor vehicle, intentionally firing at persons outside the vehicle, and doing so with the intent to inflict death. Later, as part of the same argument, the prosecutor reminded the jury that she was relying on two theories with respect to first degree murder and three with respect to second degree murder.

The prosecutor described the first degree murder theories as follows: "[T]he first theory is that the defendants intended to kill the victims. That's first degree murder. If the killing was premeditated and deliberated, express malice. . . . [¶] . . . [¶]

"Drive by murder is the second theory the prosecution presents to you for first degree murder. In essence, what that instruction says is murder perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death. That's murder in the first degree."

The only time the prosecutor said that a killing could be "intentional, unintentional, or accidental" was in explaining second degree felony murder, which was consistent with the instructions given defining second degree felony murder, CALJIC Nos. 8.32 and 8.34.

In addition, evidence of appellants' intent to kill was strong. Chavez was in the car that initially interacted with Joseph and the occupants of the Dodge Neon earlier in the evening. Big Alex, who was also in the car, testified that Chavez was upset afterward. Almost four hours later, Prado, Guzman, and Chavez followed Joseph, this time onto the highway. Big Alex, in a third car, followed appellants' car at their request. Big Alex witnessed "flashes" coming from appellants' car.

When Chavez spoke to an officer after his arrest, he admitted driving the car and that there were two guns inside. He also acknowledged that appellants went out to look for Joseph's car.

Daniel T., who was in custody with Guzman, testified that Guzman told him he had shot someone in a drive-by shooting and that the intended victim was "some guy." Barry M., who was also in custody, told an investigator that Guzman stated he was the shooter. He also said that Chavez did not know there were guns in the car but that they had gone to fight "some other guys."

At trial, Chavez admitted he was willing to fight Joseph and that both Guzman and Prado had guns. Although equivocal about whether he had talked about encountering Joseph's car while at Prado's house, Chavez acknowledged telling the police that he, Prado, and Guzman left the house to look for it.

■ This jury was told numerous times that a conviction of murder required proof of a specific intent to kill. The prosecutor consistently emphasized the requirement of finding an intent to kill. Further, the instructions accurately advised the jury that the specific intent to kill while firing intentionally at a person outside the vehicle had to be proven by the prosecution. For all these reasons, we conclude beyond a reasonable doubt that the jury believed proof of intent to kill was required to find appellants guilty of murder in the first degree. Consequently, the instructional error was harmless beyond a reasonable doubt. (See *People v. Visciotti* (1992) 2 Cal.4th 1, 58–59 [5 Cal.Rptr.2d 495, 825 P.2d 388] [misleading instructions relating to intent to kill as to charge of attempted murder harmless beyond a reasonable doubt].)

II.–X.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## *DISPOSITION*

The judgment is affirmed as to Prado and Guzman. Chavez's four-month section 12022, subdivision (a)(1), enhancement and eight-month sentence imposed in count 7 are stayed pursuant to section 654. The $10,000 section 1202.45 fine imposed on Chavez is ordered stricken. In all other respects, the judgment as to Chavez is affirmed.

Harris, Acting P. J., and Gomes, J., concurred.

A petition for rehearing was denied May 21, 2004, and appellants' petition for review by the Supreme Court was denied July 21, 2004.

---

*See footnote, *ante*, page 379.