Filed 6/22/21  P. v. Barragan CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRIAN BARRAGAN,<br><br>    Defendant and Appellant. | B304388<br>(Los Angeles County<br> Super. Ct. No. BA242184) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez, Supervising Deputy Attorney General, and Stacy S. Schwartz, Deputy Attorney General, for Plaintiff and Respondent.

This appeal is from the trial court's summary denial of defendant and appellant Adrian Barragan's motion for resentencing under Penal Code section 1170.95.[1]

By information in November 2003, appellant and his cousin Daniel Robert Barragan were charged with murder (§ 187, subd. (a), count 1), two counts of attempted murder (§ 664/187, subd. (a), counts 2-3), and shooting at an occupied motor vehicle (§ 246).[2] The information also alleged, inter alia, that: appellant intentionally killed the victim while actively participating in a criminal street gang (§ 190.2, subd. (a)(22)); the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle (§ 190.2, subd. (a)(21)); and Daniel personally and intentionally discharged or used a firearm causing great bodily injury or death (§ 12022.53, subd. (d)).

Appellant and Daniel were jointly tried. By general verdict in 2004, a jury found appellant guilty of first degree murder, attempted willful, deliberate and premeditated murder, and shooting at an occupied vehicle. The jury also found true the gang-murder special circumstance and firearm enhancement allegation. The jury returned no verdict on the special circumstance allegation that the murder was perpetrated by means of discharging a firearm from a motor vehicle. In a bifurcated proceeding, the trial court sentenced appellant to an

---

[1] Undesignated statutory references are to the Penal Code.

[2] For ease of reading, we refer to Daniel Barragan by his first name. Daniel is not a party to this appeal.

overall term of life imprisonment without the possibility of parole, plus 25 years for the firearm enhancement.

In 2019, appellant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).) Prior to the appointment of counsel or briefing by the parties, the trial court summarily denied appellant's petition. Relying on the facts as stated in appellant's direct appeal (*People v. Barragan* (Nov. 29, 2005, B175130) [nonpub. opn.] (*Barragan I*)), the court reasoned that the "evidence at trial clearly demonstrated [appellant] acted with an intent to kill and as a major participant in the crime." Based on these findings, the court concluded that appellant was ineligible for relief as a matter of law.

In this appeal, appellant contends that the trial court erred by summarily denying his petition without appointing him counsel, as he requested, and by engaging in factfinding to determine his ineligibility for relief as a matter of law. We conclude that though the trial court's engaging in factfinding was in error, the conclusion it reached was not. As the non-shooter in this case, appellant was tried as an aider and abettor (CALJIC Nos. 3.00-3.01), and the jury was instructed on three theories of first degree murder: premeditated murder, drive-by murder, and a felony murder theory (based on a modification of standard instructions) based on the discharge of a firearm from a motor vehicle

3

(CALJIC Nos. 8.20, 8.25.1, 8.21). To convict appellant of first degree murder as an aider and abettor under these theories, the jury was required to find that he shared the intent of the perpetrator to kill the victim. Because these theories remain valid in the wake of S.B. 1437 (see § 189, subd. (e)), appellant remains ineligible for relief as a matter of law. We affirm.[3]

## FACTUAL BACKGROUND[4]

Appellant and Daniel are members of the Eastside Clover Street gang. The murder victim, Frank Ibarra, had been affiliated with the gang when he was younger but had since disassociated himself from it. Ibarra still lived in the gang's territory, and on many prior occasions, had been physically harassed by appellant and other gang members.

On the evening of January 17, 2003, Ibarra and his two companions (Ruben Colunga and Ramon Lopez) went to a local Jack-in-the-Box restaurant. After pulling his vehicle into the drive-thru lane, Ibarra placed an order. As the three men waited, Ibarra saw appellant next to him, seated in the driver's seat of a sedan. Scared and shocked, Ibarra pointed out appellant to his companions. Appellant was

---

[3]    In light of our conclusion, we do not reach appellant's alternative contention (with which the People agree) that the trial court's alternative basis for denying his petition—that S.B. 1437 and section 1170.95 are unconstitutional—was in error.

[4]    We recite the factual and procedural background from our opinion in *Barragan I*.

accompanied by two other people—his cousin Daniel in the front passenger seat, and an unidentified individual in the back seat. Appellant stared at the men in a threatening manner.

Ibarra quickly tried to drive away from the restaurant, but appellant moved his car to block him. Ibarra drove toward another exit. While Ibarra's vehicle passed by appellant's, appellant called Ibarra and his companions names. Then, "[appellant] made a U-turn in his car and followed Ibarra's vehicle around the restaurant parking lot. As Ibarra was about to exit onto the street, [Daniel] leaned out of the front passenger window and shot multiple times at Ibarra's vehicle." Colunga was wounded, and Ibarra was killed by a single gunshot wound to the head. His vehicle crashed into a tree. The impact of the crash injured Lopez. After the crash, shots continued to come from appellant's sedan. Appellant then drove away.

Police responded to the scene and identified three bullet holes in Ibarra's vehicle. Officers recovered six expended 9 millimeter cartridges, one live 9 millimeter cartridge, and two spent 9 millimeter bullets. During the course of several interviews, the surviving victims made photographic identifications of appellant and Daniel.

Appellant's girlfriend testified that she had lent her sedan to appellant on the night of the shooting. From a photograph taken from a Jack-in-the-Box surveillance tape, appellant's girlfriend identified appellant as the driver of the sedan.

According to expert testimony, the shooting was gang motivated. The murder bolstered the defendants' reputations within the Eastside

5

Clover Street gang, and showed the community that the gang would punish an individual, such as Ibarra, for disassociating from the gang.

Neither appellant nor Daniel testified. During closing argument, appellant's trial counsel argued that despite driving the sedan during the shooting, appellant lacked the requisite mental state to be liable as an aider and abettor to Ibarra's murder. The prosecution argued that Daniel was the actual shooter, and appellant was liable as an aider and abettor to drive-by murder.

## PROCEDURAL BACKGROUND

In appellant's direct appeal in 2005, we reversed his two convictions for attempted murder based on instructional error,[5] but otherwise affirmed the judgment. In 2018, appellant filed a petition for writ of habeas corpus seeking relief under *People v. Chiu* (2014) 59 Cal.4th 155, 158. The trial court denied the petition, and explained that the jury had not been instructed on aider and abettor liability for first degree premeditated murder under the natural and probable consequences doctrine.

---

[5] During deliberations, the jury submitted a question to the court as follows: "Is a defendant guilty of attempted murder of person B if he or she: [¶] . . . [i]ntends to kill person A but wounds person B?" As to both defendants, the court gave an instruction on the kill zone theory of attempted murder (CALJIC No. 8.66.1). We found the supplemental instruction properly given as to Daniel, but found submission of the instruction as to appellant to be in error. (See *Barragan I*, *supra*, at p. 12 [the instruction "permitted the jury to convict [appellant] of attempted murder on a legally unsound basis: vicarious liability for his codefendant's intent to create a 'kill zone'"].)

6

On November 14, 2019, appellant filed a petition for resentencing pursuant to section 1170.95, claiming entitlement to relief because he was convicted of first degree murder under a felony-murder theory or the natural and probable consequences doctrine. Appellant requested that counsel be appointed on his behalf.

The day after the petition was filed, the trial court summarily denied it in a written memorandum. After setting forth the facts of the case as we discussed in *Barragan I*, the court found that the "trial evidence clearly established, and the jury found, that [appellant] acted with an intent to kill and was a major participant who acted with reckless indifference to human life."

Appellant timely filed a notice of appeal.

## DISCUSSION

Appellant contends that that trial court erred by summarily denying his petition without appointing him counsel and receiving briefing by the parties. He also contends the court committed error by weighing the facts in *Barragan I* to determine whether he was ineligible for relief as a matter of law.

Prior to the hearing on this appeal, we sent the parties a letter directing them to address the following three issues: (1) whether under the modified jury instruction for felony murder based on the discharge of a firearm from a motor vehicle (CALJIC No. 8.21), the jury necessarily determined that appellant, as an aider and abettor, had knowledge of the unlawful purpose of the perpetrator and the intent or purpose of committing or facilitating the commission of that crime, and

7

by act or advice aided, promoted, or instigated the commission of the crime; (2) whether, if the answer to question (1) is yes, appellant is ineligible for relief as a matter of law if convicted on that theory; and (3) whether the remaining theories of first degree murder remain valid following the enactment of SB 1437.

In their supplemental briefs, appellant answered these questions in the negative, and the People answered them in the affirmative. We agree with the People.

1.    *Proceedings Under Section 1170.95*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e).)

S.B. 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), rev. granted, S260493, Mar. 18, 2020.) Under the revised section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), rev. granted, S260598, Mar. 18, 2020.)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony murder or murder under the natural and

8

probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1170.95, subd. (b)(2).)

Subdivision (c) of section 1170.95 provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) The remainder of section 1170.95 sets forth the procedure for responding to, and the hearing on, the order to show cause, as well as post-hearing matters.

Consistent with many defendants before him, here appellant contends that subdivision (c) mandates that prior to denying a petition for resentencing, the court must appoint counsel, if requested, and accept briefing by the parties. As we have noted in our previous

9

opinions, this contention has been rejected by numerous courts, and the issue is currently before our Supreme Court. (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1137–1140; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, rev. granted, S260410, Mar. 18, 2020; *Verdugo*, *supra*, 44 Cal.App.5th 320.)

We continue to follow the procedure as set forth in *Verdugo*, *supra*, 44 Cal.App.5th 320. In that case, the court reasoned that subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) The court first "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The petitioner makes a prima facie showing so long as the assertions in his or her petition are not conclusively refuted by facts in the record of conviction as a matter of law. (*Verdugo*, *supra*, at p. 327; see *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 980; see also *People v. Duchine* (2021) 60 Cal.App.5th 798; but see *People v. Garcia* (2020) 57 Cal.App.5th 100, 116, rev. granted, Feb. 10, 2021, S265692.) If the petition states a prima facie case at the first prima facie stage of review, the court shall then appoint counsel, if requested, and review the petition a second time after briefing by the parties to determine if petitioner has established a prima facie case for relief. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327; see *Lewis*, *supra*, 43 Cal.App.5th at p. 1140.)

10

2.   *Relevant Background:  Jury Instructions and Verdict*

The jury was instructed on three alternative theories of first degree murder.  The first two theories were premeditated murder and drive-by murder under the standard CALJIC instructions (CALJIC Nos. 8.20, 8.25.1).[6]  The third theory was a version of felony murder based on the discharge of a firearm from a motor vehicle.  As to this theory, the trial court gave a modified version of CALJIC No. 8.21, as follows:

"The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime [of] discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle with the intent to inflict death is murder of the first degree when the perpetrator had the specific intent to commit that crime.  [¶]  The specific intent to commit said offense and the commission or attempted commission of that crime must be proved beyond a reasonable doubt."

Regarding these theories of culpability, the court further instructed the jury on the following principles of aiding and abetting:

"Persons who are involved in committing a crime are referred to as principals in that crime. . . .  Principals include:  [¶]  1.  Those who directly and actively commit the act constituting the crime, or  [¶]  2.

---

[6]   CALJIC No. 8.20 provided inter alia that "[a]ll murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree."

CALJIC No. 8.25.1 provided:  "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree."

Those who aid and abet the commission of the crime." (CALJIC No. 3.00.) "A person aids and abets the commission of a crime when he: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime. [¶] . . . [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting." (CALJIC No. 3.01.)

By general verdict, the jury found appellant guilty of first degree murder. The verdict form did not specify which theory of first degree murder it found to be true.

3. *The Record of Conviction Establishes as a Matter of Law that Appellant is Ineligible for Resentencing*

It is undisputed that appellant was tried and convicted not as the actual killer, but as an aider and abettor. (See *Barragan I, supra,* at pp. 2, 7.) It is also undisputed that the jury was instructed on three different theories of first degree murder against both defendants: (1) premeditated murder; (2) drive-by murder; and (3) felony murder based on the intentional discharge of a firearm from a motor vehicle.

Appellant does not dispute that he would be ineligible for relief as a matter of law if he were convicted as an aider and abettor under the first two theories of culpability. We find the concession well taken. To

convict appellant of either theory as an aider and abettor, the jury was required to find that he harbored the specific intent to kill the victim. (See *Verdugo, supra,* 44 Cal.App.5th at p. 335 [premeditated murder]; *People v. Chavez* (2004) 118 Cal.App.4th 379, 386–387 [drive-by murder] (*Chavez*); see also *Lewis, supra,* 43 Cal.App.5th at p. 1135 ["[o]ne who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law"].)

However, appellant contends that because the jury returned a general verdict for first degree murder, it could have convicted him as an aider and abettor under the third theory of liability for felony murder based on the intentional discharge of a firearm from a motor vehicle. He contends that his liability for first degree murder as an aider and abettor under this theory, as presented in the modified version of CALJIC No. 8.21, did not require a finding that he intended to kill. We disagree.

An aider and abettor must ""'share the specific intent of the perpetrator,'"" meaning he or she must ""'know[] the full extent of the perpetrator's criminal purpose and give[] aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." [(*People v. Beeman* (1984) 35 Cal.3d 547, 560.)]' (*People v. Prettyman* [(1996)] 14 Cal.4th [248,] 259.) What this means here, when the charged offense and the intended offense—murder . . . —are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, is that the aider and abettor must know and

13

share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*), fn. omitted.)

In the instant case, the jury was instructed on these principles of aiding and abetting. (See CALJIC No. 3.01.) Because the target offense listed in the felony murder instruction required the perpetrator to discharge a firearm "with the intent to inflict death," to convict appellant of first degree murder under this theory as an aider and abettor, the jury was required to find beyond a reasonable doubt that he knew the full extent of the unlawful purpose of the perpetrator and gave aid or encouragement with the intent or purpose of facilitating the commission of the drive-by murder. (*Ibid.*) In other words, the jury was required to find that he knew and shared the murderous intent of the actual shooter. (Compare CALJIC No. 3.01 with *McCoy*, *supra*, 25 Cal.4th at p. 1118; see *Chavez, supra,* 118 Cal.App.4th 379, 387.)[7]

Anticipating this result, appellant contends that the modified instruction is ambiguous because it contemplates a conviction for a killing "whether intentional, unintentional or accidental." He asserts that the word "unintentional" as one of three options for an unlawful

_____

[7]    It is for this reason that the Fifth District held that "the drive-by-shooting clause added to section 189 . . . is not an enumerated felony for purposes of the felony-murder rule." (*Chavez, supra*, 118 Cal.App.4th at p. 386; see *id.* at p. 385 ["Although the drive-by-shooting clause appears immediately after the list of enumerated felonies in section 189, it is clear from the content of the clause that drive-by shooting is not part of that list. The drive-by-shooting clause requires an 'intent to inflict death' which is never an element of felony murder"].) We do not endeavor to analyze the propriety of the modified felony murder instruction in this case, as appellant did not raise this claim of error in his direct appeal. (See *People v. Allison* (2020) 55 Cal.App.5th 449, 461.)

killing "is ambiguous and uncertain as to whose state of mind it refers to."

Neither the jury nor this reviewing court construes in isolation a sentence fragment appearing in a jury instruction. Indeed, the trial court in this case instructed the jury to do the very opposite: "Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others." (CALJIC No. 1.01.) We also review the instructions as a whole, and presume that the jurors are intelligent and able to understand and correlate the trial court's instructions to the facts of the case. (*People v. Carey* (2007) 41 Cal.4th 109, 130; *People v. Cain* (1995) 10 Cal.4th 1, 36.)

When the instructions are viewed as a whole, it is clear the word "unintentional" did not mislead the jury into shirking its responsibility to analyze appellant's conduct and state of mind as an aider and abettor to drive-by murder. As we have already discussed, the mental state required for that theory of liability was the specific intent to kill. Likewise, in convicting appellant of first degree murder, the jury found true the special circumstance allegation that appellant intentionally killed the victim while he was an active participant in a criminal street gang (§ 190.2, subd. (a)(22)). This special circumstance *requires* a finding of an intent to kill. (See *ibid.* ["[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang"].) This confirms that appellant's conviction was necessarily based on his intent to kill the victim as an aider and abettor in the murder.

In sum, because all three theories of first degree murder in this case required a finding that appellant harbored an intent to kill, the jury's first degree murder verdict renders him ineligible for relief as a matter of law. (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e).) Therefore, the court did not err in summarily denying his petition for resentencing without the appointment of counsel. (See *People v. Smithey* (1999) 20 Cal.4th 936, 972 [reviewing courts will affirm a conviction if right upon any theory of the law applicable to the case regardless of the trial court's considerations].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

16