Filed 10/15/24  P. v. Flores CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID NAPOLEON DIAZ FLORES,<br><br>    Defendant and Appellant. | 2d Crim. No. B329609<br>(Super. Ct. No. 2018006179)<br>(Ventura County) |

David Napoleon Diaz Flores appeals his conviction, by jury, of two counts of first degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a))[1] and three counts of second degree robbery.  Each murder count included robbery and multiple murder special circumstance allegations (§ 190.2, subd. (a)(3), (a)(17)(A)) and the allegation that appellant personally discharged a firearm causing death.  (§ 12022.53, subd. (d).)  The

---

[1] All statutory references are to the Penal Code unless otherwise stated.

robbery counts also included the allegation that appellant personally used a firearm in committing each robbery. (§ 12022.53, subd. (b).) The trial court sentenced appellant to an aggregate prison term of life without the possibility of parole plus 19 years, four months. Appellant was also ordered to pay restitution, fines and assessments.

Appellant contends the trial court erred when it instructed the jury that Joseph Martinez and Joel Montijo were accomplices as a matter of law. We affirm.

*Facts*

On the night of May 16, 2017, over the course of about 30 minutes, two people were shot and four people were robbed at different locations in Oxnard. Joseph Martinez and Joel Montijo pleaded guilty to several felonies in connection with these events.[2] They testified that they had been hanging out with appellant at Martinez's home in Port Hueneme when they decided to go out and commit some robberies, as the group had done several times in the past. Usually, Martinez would drive the trio around in his black BMW until they found a potential victim. Montijo and appellant would get out of the car and rob the victim. Martinez would then drive them back to one of their houses and divvy everything up. Although they usually brought guns, no one was shot before May 16.

---

[2] Martinez pleaded guilty to two counts of voluntary manslaughter, four counts of second degree robbery and one count of attempted robbery. He was sentenced to 20 years, 8 months in prison. Montijo pleaded guilty to one count of second degree murder and four counts of second degree robbery. He also admitted to having personally used a firearm in each offense. Montijo was sentenced to 35 years to life in prison.

2

On the evening of the 16th, Montijo had a black Glock .40 caliber pistol. Martinez loaned appellant his black .45 caliber Glock pistol. Martinez drove the trio around in his BMW until Montijo told him to drive down an alleyway and stop by a carport that was adjacent to an apartment building. Aaron Austin was standing near his minivan when he was confronted by appellant and Montijo. Appellant told Austin to give up his valuables. Austin protested that he did not have anything. Meanwhile, Montijo opened the sliding door to Austin's van and searched for valuables. He didn't find anything. Appellant shot Austin and took his backpack before returning to the BMW with Montijo. He later threw the backpack out of one of the car's windows. Austin died from his injuries.

Martinez continued driving. After about five minutes, he parked in another alley. Appellant and Montijo walked down the alley. They soon encountered Ernesto Perez and Rosa Magana who were sitting in a car parked in one of the carports. Montijo went to the driver's side of the car, pointing his pistol at Perez. Appellant went to the passenger side and pointed Martinez's pistol at Magana. Appellant communicated with the victims because he could speak Spanish and Montijo could not. Perez and Magana handed over their phones, wallet, purse and car keys. Appellant and Montijo returned to their car and Martinez drove away. They took cash out of Perez's wallet and his cell phone, then threw the rest of the stolen items out of the car window.

Martinez drove for a few more minutes, until Montijo told him to stop. Montijo tried to rob a man who had been walking alone. The victim handed him a bunch of change. Montijo and appellant continued walking into an alley. There,

3

they found Edward Viveros Leon and Constancio Lopez Vasquez who were drinking in a carport. Viveros laughed at Montijo, saying he did not believe the pistol was real. Montijo shot Viveros in the leg. At about the same time, appellant fired several shots at Viveros, hitting him in the head and left shoulder. Appellant took the other man's cell phone and then he and Montijo returned to the car. Viveros died from his injuries. His roommates found his body early the next morning as they were leaving for work.

Martinez explained that, in the days after the shootings, he became concerned the .45 caliber pistol would be connected to him, particularly because he had loaded it. At Martinez's request, appellant sold the pistol.

Officers investigating the Austin shooting found the keys to his mini van in the car port near his body. They also recovered two .45 caliber shell casings in the alley. Two .45 caliber bullets were recovered from Austin's body. Montijo's fingerprints were found on the passenger door of Austin's minivan.

Two .45 caliber shell casings, one .40 caliber shell casing and one .40 caliber bullet fragment were recovered several feet from Viveros' body. During the autopsy, .45 caliber bullets were recovered from his body.

The .45 caliber bullets recovered from Austin and Viveros were fired from the same pistol. The .45 caliber shell casings found at the two murder scenes were also fired from the same pistol.

A search of Montijo's residence yielded a Glock 27 .40 caliber pistol. The .40 caliber bullet casing found at the Viveros

4

murder scene was fired from that pistol. Officers also recovered the cell phone that had been stolen from Ernesto Perez.

In June 2017, appellant was in custody in Ventura County on an unrelated firearm charge. While being interviewed by detectives, appellant admitted that he knew Montijo and Martinez and that he had been in Martinez's car in the past. Detectives showed appellant a press release about the Austin and Viveros shootings. Appellant told them that he was in Texas when the shootings occurred. Cell phone data demonstrated that appellant was in Oxnard at the time of the murders. In addition, his phone traveled very close to Martinez's phone, to the site of the Austin murder, to the site of the Viveros murder and back to Martinez's home in Port Hueneme.

A confidential informant (CI) had a recorded conversation with appellant while they were both in custody. Appellant told the CI that he had no proof of his alibi. He also told the CI that the victims were "random fools," that a revolver was not used in the crimes and that a Glock pistol bigger than a 9-milimeter was used. He was positive the police did not have the pistol.

*Discussion*

The trial court instructed the jury with CALCRIM Nos. 335 and 708, that, "If the crimes of Murder or Robbery were committed, then Joel Montijo and Joseph Martinez were accomplices to those crimes." Appellant contends the trial court prejudicially erred in instructing the jury that Martinez and Montijo were accomplices as a matter of law. He contends the trial court should instead have instructed the jury with CALCRIM Nos. 334 and 707, to first determine whether they were accomplices. We conclude there was no error because there

5

was no reasonable dispute that Martinez and Montijo were accomplices.

"A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . . ." (§ 1111.) In this context, an accomplice is a person "who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (*Ibid.*) "'A witness is liable to prosecution within the meaning of section 1111 if he or she is a principal in the crime.' [Citation.] A principal includes those who 'directly commit the act constituting the offense' and those who 'aid and abet in its commission.' [Citation.]" (*People v. Carrasco* (2014) 59 Cal.4th 924, 968.) Whether a person is an accomplice is a question of fact for the jury, unless the facts and the inferences to be drawn from them are undisputed. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 103.)

Where the evidence will support only one conclusion, the trial court has a duty to instruct the jury with CALCRIM No. 335, that a witness is an accomplice to the charged offense as a matter of law. (*People v. Snyder* (2003) 112 Cal.App.4th 1200, 1218-1219.) However, where the evidence is in dispute, the trial court is obligated to instruct the jury with CALCRIM No. 334, that it must determine whether the witness is an accomplice, and the factors it should consider in making that determination.[3]

---

[3] Where they are alleged, the trial court also has a duty to instruct the jury with CALCRIM No. 707 or No. 708, on the consideration of accomplice testimony in determining whether special circumstance allegations have been proved.

(*People v. Hayes* (1999) 21 Cal.4th 1211, 1270-1271 (*Hayes*); *People v. Johnson* (2016) 243 Cal.App.4th 1247, 1269 (*Johnson*).)

"Failure to instruct pursuant to section 1111 is harmless if there is sufficient corroborating evidence. Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense." (*Hayes, supra,* 21 Cal.4th at p. 1271.) It "must implicate the defendant in the crime and relate to proof of an element of the crime, [but] it need not be sufficient to establish all the elements of the crime." (*People v. Williams* (2008) 43 Cal.4th 584, 638 (*Williams*).) Corroboration is sufficient "'"if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." . . .'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 95 (*Manibusan*), quoting *People v. Valdez* (2012) 55 Cal.4th 82, 147-148.) While the testimony of one accomplice cannot corroborate that of another accomplice, a defendant's own admissions may constitute the necessary corroboration. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1222; *People v. Williams* (1997) 16 Cal.4th 635, 680.)

Appellant contends the trial court erred by instructing the jury that Martinez and Montijo were accomplices to the crimes, rather than instructing the jury to determine whether they were accomplices. He contends the instruction allowed their guilt to be imputed to him because it informed the jurors that the trial court found their testimony credible. We are not persuaded.

First, there is no reasonable factual dispute that Martinez and Montijo were accomplices to the murders and robberies. They were charged with and pled guilty to the same

7

crimes that were charged against appellant.  Each witness admitted that he was a principal in the commission of those crimes.  The defense theory at trial was that Martinez was actually the shooter and Montijo had a greater role than he admitted.  But even under this theory, each witness still meets the statutory definition of an accomplice because he is either a direct perpetrator or an aider and abettor to each offense.  (§ 1111.)

Appellant contends the instruction that Martinez and Montijo were accomplices as a matter of law implicitly informed jurors that the trial court found their testimony credible, necessarily imputing their guilt to appellant.  We disagree.  The trial court's instruction did not inform the jury that appellant had committed the charged crimes, or that Martinez and Montijo were his accomplices.  It instructed the jury that, if it found the crimes had been committed, then Martinez and Montijo were "accomplices to those crimes."  The jury was still charged with finding whether the crimes occurred and whether appellant participated in them.

Moreover, the record contains sufficient evidence corroborating their testimony.  (*Manibusan, supra,* 58 Cal.4th at p. 95; *Williams, supra,* 43 Cal.4th at p. 636.)  Consistent with the testimony of both witnesses, security camera video and eyewitness testimony established that a BMW was present at each crime scene.  Bullets and casings recovered from the crime scenes confirmed that two armed individuals committed each offense, as described by both witnesses.  A .40 caliber pistol was recovered from Montijo's residence.  It matched a casing found at the scene of Viveros's murder.  In addition to other gunshot wounds, Viveros was shot in the leg, as Montijo testified.  Perez's

cell phone was recovered from Montijo's residence. Montijo's fingerprints were found on the passenger door of Austin's van. Martinez testified that he loaned appellant a .45 caliber pistol. While that pistol was not recovered, .45 caliber bullets and casings were found at both murder scenes and recovered from the bodies of both victims.

Appellant also made admissions that corroborate the accomplice testimony. In recorded conversations, appellant told a jailhouse informant that the victims were just "random fools," that he used a Glock pistol that was bigger than a 9-millimeter and that he was positive the police did not have it. When he spoke with detectives, appellant admitted that he knew both accomplices and that he had been in Martinez's car. He also provided a false alibi. Contrary to appellant's claim that he was in Texas, cell phone data placed his phone very near Martinez's and the crime scenes and then at Martinez's house in Port Hueneme.

This independent evidence is more than sufficient to corroborate the accomplices' testimony. (*Manibusan, supra,* 58 Cal.4th at p. 95; *Hayes, supra,* 21 Cal.4th at p. 1271.) Consequently, there is no reasonable probability the jury would have found that either witness was not an accomplice or that their testimony was not corroborated, had it been instructed to make that finding. (*Johnson, supra,* 243 Cal.App.4th at p. 1271.)

Moreover, the instruction that Martinez and Montijo were accomplices meant that their testimony had to be independently corroborated before the jury could rely on it. If the jury found the witnesses were not accomplices, the only consequence would have been that it could rely on their testimony without any independent corroboration. The

9

instruction did not prejudice appellant because it required the jury to find their testimony was corroborated before relying on it.

Finally, we reject appellant's contention that the trial court violated his due process right to a fair trial by removing from the jury the question of whether Martinez and Montijo were accomplices. The trial court instructed the jury to evaluate the witness' credibility (e.g., CALCRIM Nos. 226, 316) and to determine appellant's guilt. Nothing in its instructions removed those questions from the jury. The only consequence of the accomplice instructions at issue was to add the corroboration requirement, making it more difficult for the jury to find appellant guilty. Those instructions could not have contributed to the verdict. Thus, any error in the accomplice instructions was harmless beyond a reasonable doubt. (*People v. Chavez* (2004) 118 Cal.App.4th 379, 387.)

*Conclusion*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

10

David Worley, Judge

Superior Court County of Ventura

_____

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, Stefanie Yee, Deputy Attorney General, for Plaintiff and Respondent.